THE NORTH CAROLINA STATE BAR, Plaintiff v. SYBIL H. BARRETT, ATTORNEY, Defendant

No. COA11-1274

(Filed 20 March 2012)

**Attorneys—Disciplinary Hearing Commission—due process—allegations materially different from complaint—insufficient evidence to support disbarment**

The Disciplinary Hearing Commission denied defendant due process by conducting a hearing on the basis of allegations of fraud which materially differed from those alleged in the complaint. Defendant did not waive her due process rights and consent to consideration of additional issues by failing to object to admission of evidence concerning those issues. There was insufficient evidence to support disbarment or the imposition of other sanctions and the order of discipline disbarring defendant was reversed.

Appeal by Defendant from orders filed 23 February 2011 and 29 April 2011 by the Disciplinary Hearing Commission. Heard in the Court of Appeals 7 February 2012.

*Deputy Counsel David R. Johnson and Counsel Katherine Jean for Plaintiff.*

N.C. STATE BAR v. BARRETT

[219 N.C. App. 481 (2012)]

*Law Office of Laura H. Budd, PLLC, by Laura H. Budd, for Defendant.*

STEPHENS, Judge.

### Procedural History and Factual Background

This case arises from a grievance filed with Plaintiff, the North Carolina State Bar ("the State Bar"), concerning Defendant Sybil H. Barrett's participation as an attorney in a residential real estate closing in July 2007. On 30 October 2008, the State Bar received a grievance from the seller involved in the closing. The grievance alleged that Defendant had misrepresented the source of the buyer's down payment on a HUD-1 settlement statement at closing in order to prevent the lender from learning that the seller had loaned the buyer part of the down payment funds. The buyer and seller had entered into an agreement concerning repayment of the loan. However, the buyer had apparently not made payments expected by the seller, who expressed concerns about his ability to collect on the loan. In correspondence sent to Defendant before filing the grievance, the seller had claimed that this misrepresentation had made the buyer appear to be a better credit risk in the eyes of the lender, permitting the buyer to finance purchase of the residence to the seller's detriment.

The State Bar sent Defendant a notice of grievance, and Defendant responded by letter dated 6 March 2009, asserting that she had received approval of the HUD-1 statement from the lender, Chase Bank, and had not made any misrepresentations in connection with the closing. Defendant further asserted that the buyer and the seller had agreed to a five-year, no interest $7,400 loan of the down payment funds with a balloon payoff, but that the buyer had later (post-closing) told the seller he was planning to refinance the home in order to pay off the loan at an earlier date. Defendant suggested that the refinance had not occurred, angering the seller, who had filed the grievance out of a desire "to punish everyone associated with the [closing]."

On 13 April 2010, the State Bar filed a complaint with the Disciplinary Hearing Commission ("the DHC") alleging Defendant had knowingly misrepresented the seller's $7,400 loan to the buyer as a down payment on the HUD-1 statement. After Defendant refused to respond to the State Bar's October 2010 discovery requests, The State Bar moved to compel her response on 4 January 2011. On 13 January 2011, the DHC entered an order allowing the motion to compel. On

the same date, Defendant sent an email response to the chair of the DHC hearing committee stating:

> I reviewed your bogus Order to Compel. I will not be producing anything. In fact, I will not be in communication with any of you people ever again.
>
> I will not be at the February hearing.
>
> I am moving on with my life. You have no power over me. You are mistaken to think that you do. You are fully aware that Mrs. [Leanor] Hodge [the attorney handling the matter for the State Bar] is lying. Apparently, this is the status quo.

Defendant did not comply with the order and the State Bar moved for sanctions against her. In her objection to the motion for sanctions, Defendant asserted that the State Bar's "continued requests for documents . . . are duplicitous and harassing in nature." The DHC denied the State Bar's motion for sanctions by order entered 23 February 2011.

At a hearing before a three-member DHC panel on 3 February 2011, the State Bar presented evidence that, in the July 2007 closing, Defendant represented the buyer and his lender. Paul Johnson, the lender's closing officer handling the loan, first sent Defendant instructions calling for a down payment of $22,700 and prohibiting secondary financing without the lender's written approval. However, the buyer had received two loans toward the down payment: $14,800 dollars from National Home and $9,400[1] from the seller. On 17 July 2007, the day of the closing, Defendant prepared a draft HUD-1 statement for the closing showing "Down Payment [of] $7,400" as a credit to the buyer, debited $7,400 from the proceeds due to the seller, showed "Commission earned [of] $14,800" from National Home as a contribution from the buyer, and showed a deduction from the proceeds due to the seller of $14,800 as a seller fee to National Home. Defendant testified that Johnson had instructed her via phone call and fax to record the amounts in this manner. Defendant transmitted

---

1. Originally, the seller had agreed to a $7,400 loan to the buyer, but at closing, the buyer was still $2,000 short of the funds needed for his down payment. During the closing, the seller agreed to loan the buyer an additional $2,000, for a total loan amount of $9,400, and instructed Defendant to draft a promissory note. However, Defendant continued to list the amount as $7,400 on the HUD-1 statement she prepared. At the DHC hearing, Defendant acknowledged this error, which she asserts was unintentional and merely clerical. The error in the amount of this loan was not part of any allegations by the State Bar against Defendant.

the draft to Johnson, who stamped it "APPROVED" and initialed it "PJ" with the date "7-17" before returning it to Defendant.[2]

Defendant, the buyer and his agent, and the seller's agent were present in Defendant's office for the closing, while the seller participated by teleconference, email, and fax. Defendant testified that the HUD statement signed by herself, the buyer, and the seller was the PJ HUD statement, which showed entries regarding the $7,400 and $14,800 amounts as approved by the closing agent. The final PJ HUD statement was three pages instead of the standard two pages because the seller participated by fax. Thus, the first two pages were identical except that the buyer had signed the first and the seller had signed the second, receiving and returning it via fax. Defendant testified that, after the closing was concluded, she sent the signed PJ HUD statement along with other closing documents to the lender via FedEx. At the hearing, Defendant produced a fax from Johnson, dated two days after the closing, requesting that Defendant correct some wording on the title commitment, one of the documents Defendant had sent to the lender in the package of closing documents. Defendant also produced a copy of the PJ HUD statement from her files at the hearing.

The State Bar offered testimony from an employee of the lender[3] that the lender's file contained a substantially different HUD statement ("the MG HUD statement") than that produced by Defendant. The MG HUD statement was only two pages long, showed the initials "MG" instead of "PJ," and had the buyer's and seller's signatures together on the first page. The seller's signature was forged. In addition, the MG HUD statement lacked the $7,400 and $14,800 entries contained on the PJ HUD statement and instead showed a $22,700 down payment by the buyer. The lender's representative testified that the PJ HUD statement was not part of the lender's file. Defendant testified that she had never seen the MG HUD statement prior to the hearing, had not prepared it, and knew nothing about the seller's forged signature.

At the close of the hearing, the DHC panel made oral findings that Defendant had committed fraud and criminal violations, and ordered Defendant's disbarment. In its written order filed 23 February 2011,

2. This HUD statement will be referred to as "the PJ HUD statement."

3. The lender's representative at the hearing had not participated in the closing and had no knowledge about it beyond having reviewed the records that he produced from the lender's file. Johnson was not a witness at the hearing.

the DHC made detailed findings of fact and conclusions of law, again ordering disbarment. Specifically, conclusion of law 2 states that Defendant violated the Rules of Professional Conduct:

> a. By falsely representing on the HUD-1 Settlement Statement that she provided to the buyer and seller . . . that the proceeds of the National Home loan were a "Commission Earned" and the seller's loan was a "Down Payment" and by providing the lender with a HUD-1 Settlement Statement that failed to disclose these loans, Defendant committed a criminal act that reflects adversely on her honesty, trustworthiness or fitness as a lawyer in violation of Rule 8.4(b), and engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Rule 8.4(c); and

> b. By concealing from the lender the fact that the buyer obtained subordinate financing for his purchase of [the real property], defendant engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Rule 8.4(c).

On 29 March 2011, Defendant moved the DHC to reconsider; the DHC denied the motion. Defendant appeals from the 23 February 2011 order and from the denial of her motion to reconsider.

## Discussion

Defendant makes four arguments: that the DHC denied her due process by conducting the hearing on the basis of allegations of fraud materially different from those alleged in the complaint; that the evidence did not support the finding of fact that Defendant was the source of the MG HUD statement; that the evidence did not support the finding of fact and conclusion of law that Defendant knowingly misrepresented the source of the buyer's down payment; and that the DHC imposed a disproportionate and unwarranted discipline on Defendant. For the reasons discussed herein, we reverse the DHC's order.

## Due Process Claim

Defendant first argues that the DHC denied her due process by conducting the hearing on the basis of allegations of fraud which materially differ from those alleged in the complaint. We agree.

> Notice and an opportunity to be heard prior to depriving a person of his property are essential elements of due process of law which is guaranteed by the Fourteenth Amendment of the United States Constitution. Accordingly, prior to the imposi-

tion of sanctions, a party has a due process right to notice both (1) of the fact that sanctions may be imposed, and (2) the alleged grounds for the imposition of sanctions.

*In re Small*, 201 N.C. App. 390, 395, 689 S.E.2d 482, 485-86 (2009) (quotation marks and citations omitted), *disc. review denied*, 364 N.C. 240, 698 S.E.2d 654 (2010). An attorney facing disbarment is entitled to "procedural due process, which includes fair notice of the charge" made against her. *In re Ruffalo*, 390 U.S. 544, 550, 20 L. Ed. 2d 117, 122 (1968). The rules of the State Bar provide that "[p]leadings and proceedings before a hearing panel [of the DHC] will conform as nearly as practicable with requirements of the North Carolina Rules of Civil Procedure and for trials of nonjury civil causes in the superior courts except as otherwise provided herein." 27 N.C.A.C. Ch. 1, Sub. B .0114(n). The North Carolina Rules of Civil Procedure, in turn, require a complaint to include a "short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief[.]" N.C.R. Civ. P., Rule 8(a)(1) (2011). Further, the State Bar's own rules state that "[c]omplaints in disciplinary actions will allege the charges with sufficient precision to clearly apprise the defendant of the conduct which is the subject of the complaint." 27 N.C.A.C. Ch. 1, Sub. B .0114(c).

Here, the complaint contains only one allegation of misconduct: that "Defendant purposefully represented on the HUD-1 Settlement Statement [of the relevant closing] that the proceeds of the seller's loan to the buyer were a down payment made by the buyer [knowing this] was a false representation." As noted *supra*, the PJ HUD statement listed the seller's loan to the buyer as "Down Payment [of] $7,400[.]" The complaint further alleges this action to be in violation of Rule 8.4 of the Rules of Professional Conduct, subsections (b) ("commi[ssion] of a criminal act") and (c) ("engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation"). Thus, the complaint alleged a single false representation by Defendant in violation of the Rules: the entry of the $7,400 loan as a "Down Payment" on the PJ HUD statement.

However, at the hearing, the State Bar presented evidence of different alleged acts of fraud and additional alleged misrepresentations, to wit, that Defendant had produced and submitted to the lender the MG HUD statement, which contained different financial information and included a forged signature purporting to be the

seller's. Because these allegations were not contained in the complaint, Defendant was not prepared to refute or defend against them. Indeed, nothing in the record suggests that Defendant was aware that the MG HUD statement existed. When the State Bar sought to introduce the MG HUD statement at the hearing, Defendant objected, stating that she had never seen it before and had not prepared it. At the close of the hearing, Defendant noted that the complaint only alleged misrepresentations about the source of the down payment listed on the PJ HUD statement and, as a result, "my understanding is that was the only issue that required me to formulate a defense for today."

The State Bar first contends that, because Defendant was properly served with a copy of the subpoena to the lender requesting its account records from the loan closing at issue, she also received sufficient notice of any additional allegation which might arise from review of those documents. Thus, the State Bar asserts that Defendant cannot argue a lack of due process because she did not ask to examine the documents produced by the lender before the hearing. However, as the State Bar concedes, it never informed Defendant that the documents had been obtained, in violation of Rule 45(d1) of the North Carolina Rules of Civil Procedure. It can be reasonably inferred that the State Bar's violation of Rule 45(d1) would have indicated to Defendant that no documents had been received from the lender. We decline to hold that a party waives her due process rights by failing to request documents which the opposing party has implied do not exist and will not be part of the case against her.

Moreover, per the complaint, Defendant believed she need only prepare a defense to the allegation that the $7,400 entry on the PJ HUD statement was a false representation. She brought to the hearing the materials she apparently believed would constitute a defense against that allegation: her testimony that Johnson instructed her to list the $7,400 loan as a down payment on the HUD statement, a copy of the PJ HUD statement showing that the lender's agent had approved it, and the fax from Johnson sent two days after closing which suggested the lender had received the closing documents. We see no way that Defendant could have anticipated the addition of the allegations against her regarding the MG HUD statement, much less prepare a defense against them.

We likewise reject the State Bar's assertion that Defendant's due process rights were protected because "evidence of [Defendant's] additional falsification of documents was cumulative and did not contradict the misconduct identified in the complaint that [she] had

knowingly falsified information on the HUD-1 settlement statement" and because the DHC concluded that Defendant had violated the same two Rules of Professional Conduct cited in the complaint. As the State Bar notes, the hearing and subsequent order dealt with "additional falsification of documents[.]" These additional alleged falsifications were far more than simply cumulative. Rather, they were different both in kind and in fact. The complaint advanced the theory that Defendant made false representations about the $7,400 loan on the PJ HUD statement. The theory advanced by the State Bar at the hearing was that Defendant created an entirely different HUD statement (the MG HUD statement) which did not list a $7,400 down payment, but rather listed a down payment of $22,700, and further contained a forgery of the seller's signature. The allegations in the complaint did not "allege [these] charges with sufficient precision to clearly apprise" Defendant of the conduct which she would have to defend at the hearing. 27 N.C.A.C. Ch. 1, Sub. B .0114(c). As such, the State Bar violated its own rules as well as Defendant's due process rights.

The State Bar also contends that Defendant waived her due process rights and consented to consideration of the additional issues by failing to object to admission of the MG HUD statement or testimony about it. However, waiver of the right to due process must be made voluntarily, knowingly, and intelligently. *Estate of Barber v. Guilford Cty. Sheriff's Dept.*, 161 N.C. App. 658, 664, 589 S.E.2d 433, 437 (2003). As noted *supra*, Defendant stated during the hearing that "my understanding is that [the misrepresentation alleged in the complaint] was the only issue that required me to formulate a defense for today." This statement indicates Defendant believed she was facing only the allegation in the complaint and was not prepared to defend any others; it does not suggest that she was voluntarily, knowingly, and intelligently waiving her right to due process.

Thus, the DHC erred in making findings of fact and conclusions of law about any alleged wrongdoing by Defendant beyond the listing of the $7,400 loan from the seller to the buyer as a down payment on the PJ HUD statement. Accordingly, we vacate the following portions of the DHC order on due process grounds: findings of fact 11-13, 17-19, and the parts of findings of fact 21-23 and conclusion of law 2(a) which refer to the $14,800 "Commission Earned" from National Home or the MG HUD statement received by the lender.[4] We also

---

4. The DHC order does not identify the HUD-1 statements by their initials. However, all references to the HUD-1 statement "contained in the lender's file" or "pro-

**N.C. STATE BAR v. BARRETT**

[219 N.C. App. 481 (2012)]

vacate the entirety of conclusion of law 2(b), which states that Defendant concealed the buyer's subordinate financing from the lender. To the extent this portion of conclusion of law 2 refers to information contained in the MG HUD statement, it violates Defendant's due process rights. To the extent it refers to information contained in the PJ HUD statement, it is not supported by competent evidence, as explained *infra*.

### Sufficiency of the Evidence

We must also vacate findings of fact 24 and 27 in their entirety, and the remaining portions of findings of fact 22-23 and conclusion of law 2(a) as not supported by competent evidence.

These findings and conclusions relate to Defendant's alleged misrepresentations about the source of the $7,400 "down payment" listed on the PJ HUD statement, a matter alleged in the complaint and thus properly before the DHC at the hearing. The State Bar's complaint did not specify to whom this false representation was supposedly made. However, it could not have been the buyer or the seller since both were fully aware that the $7,400 "down payment" was actually a loan from the seller to the buyer.[5] Nor could the $7,400 "down payment" have been a false representation to the lender, since the State Bar's theory was that Defendant never sent the signed PJ HUD statement to the lender, instead creating and submitting the fraudulent MG HUD statement in its place. The uncontradicted testimony of the lender's representative was that the lender's file contained only the MG HUD statement. The lender can hardly have been misled or deceived by information contained in a document which it never received. Likewise, to the extent conclusion of law 2(b) refers to information contained in the PJ HUD statement, it is not supported by competent evidence and is vacated.

Having vacated the findings of fact noted above and the entirety of conclusion of law 2, there is no support for the DHC's "Additional Findings of Fact Regarding Discipline" 2 or "Conclusions of Law Regarding Discipline" 1, 2(a), 3-4, and 6. The only remaining additional finding of fact and conclusion of law regarding discipline state that Defendant refused to comply with a 13 January 2011 order ("the

---

vided to the lender" must be interpreted as references to the MG HUD statement since the lender's file produced at the hearing contained *only* the MG HUD statement.

5. Indeed, the buyer and seller had Defendant draw up a promissory note for the loan as part of the closing transaction.

discovery order") from the DHC compelling her response to discovery requests by the State Bar which interfered with the State Bar's ability to regulate attorneys to the detriment of the legal profession.

However, Defendant's failure to comply with the discovery order was also the subject of an order ("the sanctions order") filed by the same DHC panel on the same date as the order of discipline (23 February 2011). In the sanctions order, the DHC found that Defendant had failed to comply with the discovery order, but denied the State Bar's motion for sanctions against Defendant because her noncompliance "did not unduly prejudice the State Bar's case[.]" In other words, the DHC panel had already determined that Defendant's failure to comply with the discovery order was not sanctionable. Thus, that misconduct, standing alone, cannot serve as the basis for Defendant's disbarment or imposition of any other sanction. Accordingly, the order of discipline disbarring Defendant is

REVERSED.

Chief Judge MARTIN and Judge HUNTER, ROBERT C., concur.