IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-841

Filed: 16 July 2019

Wake County, No. 13 CVS 9159

OSI RESTAURANT PARTNERS, LLC f/k/a OSI RESTAURANT PARTNERS, INC. and OUTBACK STEAKHOUSE, INC.; BONEFISH GRILL, LLC f/k/a BONEFISH GRILL, INC.; CARRABBA'S ITALIAN GRILL, LLC f/k/a CARRABBA'S ITALIAN GRILL, INC.; CHEESEBURGER IN PARADISE, LLC; OS SOUTHERN, LLC f/k/a OS SOUTHERN, INC.; OSI/FLEMING'S, LLC f/k/a OUTBACK/FLEMING'S, LLC; and OUTBACK STEAKHOUSE OF FLORIDA, LLC f/k/a OUTBACK STEAKHOUSE OF FLORIDA, INC., Plaintiffs,

v.

OSCODA PLASTICS, INC. and ALLIED COMPANIES, LLC f/k/a THE ALLIED COMPANIES INTERNATIONAL, LLC and its successors in interest and/or related entities ALLIED INDUSTRIES INTERNATIONAL, INC.; ALLIED FLOORING PRODUCTS, INC.; ECO-GRIP CENTRAL, LLC; ECO-GRIP EAST, LLC; ECO-GRIP FLOORING, LLC; ECO-GRIP FLOORING GULF COAST, LLC; and ECO-GRIP GREAT LAKES, LLC, Defendants.

Appeal by defendant Oscoda Plastics, Inc. from order entered 10 April 2018 by Judge Robert H. Hobgood in Wake County Superior Court. Heard in the Court of Appeals 27 March 2019.

*Young Moore and Henderson, P.A., by Christopher A. Page and Jonathan L. Crook, for plaintiffs-appellees.*

*Parker Poe Adams & Bernstein LLP, by Kevin L. Chignell and Collier R. Marsh, for defendant-appellant Oscoda Plastics, Inc.*

ZACHARY, Judge.

Defendant Oscoda Plastics, Inc.[1] appeals from the portion of the trial court's order imposing discovery sanctions in the form of striking its answer to Plaintiffs' claims for negligence, breach of implied warranty, and breach of express warranty. Because Defendant was not given notice that sanctions might be imposed, we reverse that portion of the trial court's order.

## Background

Plaintiffs are several restaurants operated under the parent company OSI Restaurant Partners, LLC (collectively, "Plaintiffs"). Defendant is a manufacturer of commercial flooring products, which Plaintiffs purchased and installed in 130 of their restaurants across the United States. Plaintiffs initiated the instant action against Defendant on 5 July 2013, alleging that the flooring they purchased from Defendant had "completely failed at numerous restaurants, requiring complete replacement of the flooring products at numerous of the Plaintiffs' locations," as well as "costly repairs." Specifically, Plaintiffs alleged that the problems included "seam separation, seam distortion, bubbling under the flooring, flooring detachment from the substrate, and water ponding beneath the flooring." In their complaint, Plaintiffs asserted claims for negligence, breach of implied warranty, breach of express warranty, strict liability, negligent misrepresentation, and breach of consumer protection acts.

---

[1] The other defendants are not party to the instant appeal.

OSI Rest. Partners, LLC v. Oscoda Plastics, Inc.

*Opinion of the Court*

Through discovery, Plaintiffs sought to learn the extent of Defendant's knowledge of the alleged defects in its flooring. Plaintiffs requested that Defendant produce, *inter alia*, all documents that referred or related to (1) "the design, testing, or manufacture of" its flooring, (2) "any issues with or complaints about" the flooring, and (3) "any attempt to repair or otherwise correct the issues with or complaints about" the flooring. Following Plaintiffs' first motion to compel, Defendant indicated that it had certain "backup tapes" that might potentially contain responsive emails and documents.

On 4 September 2015, the trial court ordered Defendant to produce "all responsive, non-privileged documents contained on the backup tapes for the time period from 2006 through 2009." On 9 October 2015, Defendant filed a motion for reconsideration, contending that it had "obtained new information . . . that indicates that recovery of the backup tapes will be far more expensive and time consuming . . . than [Defendant] initially expected." However, after two orders extending Defendant's deadline to produce the backup tapes, Defendant returned to court, this time representing that it was unable to access the documents due to the fact that the backup tapes were encrypted.

On 16 March 2016, the trial court entered an order (the "Spoliation Order"), concluding that Defendant had "intentionally encrypted emails and . . . intentionally failed to retain the electronic ability to retrieve the subject emails, with knowledge of

their relevance and materiality for this case," and that Defendant had "suppressed its knowledge of this encryption for several months prior to it being revealed for the first time by forensic experts." The trial court ordered that Defendant be sanctioned with a "spoliation instruction to the jury unless, not less than 120 days prior to the trial, [Defendant] provide[d] Plaintiffs the subject emails in an unencrypted form."

Shortly thereafter, Defendant represented that it had discovered a means by which it could gain access to the documents on its backup tapes, and on 14 October 2016, Defendant produced more than 5,000 pages of those documents. When Plaintiffs reviewed the documents, they discovered a potential reference to the existence of flooring testing data. Plaintiffs requested that Defendant further supplement its document production to include those related materials, and after Plaintiffs filed a second motion to compel, Defendant produced additional documents. Defendant also indicated that it did not possess any additional responsive documents requested by Plaintiffs, but that such documents were in the possession of its sister company, Duro-Last. The trial court thus ordered Defendant to "use reasonable efforts to encourage the voluntary production of the Duro-Last Documents by Duro-Last."

Duro-Last produced 1,054 pages of documents on 13 July 2017. At that point, Defendant maintained that the terms of the Spoliation Order had been "fully

satisfied," and on 13 November 2017, Defendant filed a motion to set aside the spoliation instruction.

According to Plaintiffs, however, the documents that they received from Duro-Last contained several highly relevant emails that would have been stored on Defendant's backup tapes, but nevertheless were not included within the 5,000 pages of documents that Defendant produced from the tapes. In particular, Plaintiffs emphasized an email sent from Defendant's technical sales manager to a Duro-Last representative, in which the manager stated, "we have been doing some testing on our vinyl flooring . . . . The biggest problem we have with material in the field is shrinking." According to Plaintiffs, this "smoking gun" email

> was on the backup tapes, it is not privileged, it is relevant, it contains search terms [Defendant] apparently applied in [its] review, and *it was sent from the only employee who supplied information for [Defendant's] responses to Plaintiffs' first set of interrogatories, in which [Defendant] flatly denied any defects with its product.*

Plaintiffs subsequently filed a motion to amend their complaint in order to allege "newly discovered facts related to [Defendant's] knowledge of defects in the [flooring] and [Defendant's] contemporaneous misrepresentations and fraudulent concealment of the same," and to "assert claims for fraudulent concealment and punitive damages against [Defendant] based on th[is] newly discovered evidence." Defendant consented to Plaintiffs' motion to amend their complaint.

On 14 December 2017, Defendant's motion to set aside the spoliation instruction came on for hearing before the Honorable Robert H. Hobgood. Plaintiffs argued that the spoliation instruction was justified based upon Defendant's conduct throughout discovery. Furthermore, pointing to the newly discovered "smoking gun" emails, Plaintiffs argued that the Spoliation Order "not only shouldn't be lifted, [but] it should be modified to make it more severe." Plaintiffs suggested that the trial court order Defendant to produce *all* of its remaining backup tapes within 30 days, and if Defendant did not comply, Plaintiffs asked that the court "consider the sanction of a default judgment against [Defendant], and we will try the case on damages."

Apparently surprised by Plaintiffs' stance, Defendant noted that Plaintiffs' argument was "not a response to our argument" regarding the spoliation instruction, but was instead "related to [the allegations in their] motion to amend." Defendant maintained that it had consented to Plaintiffs' motion to amend "because we understood that today was not the time to argue that." Defendant also pointed out that there was not a pending motion to compel, but nevertheless attempted to defend against Plaintiffs' suggestion that additional sanctions were warranted.

On 10 April 2018, the trial court denied Defendant's motion to set aside the spoliation instruction due to Defendant's failure to comply with the Spoliation Order. Specifically, the trial court found that Defendant "ha[d] not satisfied the

requirement . . . that it produce to Plaintiffs the subject emails from 2006 to 2009 on the backup tapes." In addition, the trial court found that Defendant's

> repeated sworn representations in its pleadings and interrogatory responses that it never believed [its flooring] product to be defective in any way have been shown to be false or misleading by the documents Duro-Last produced from the backup tapes. The Court finds it significant that perhaps the most critical email Duro-Last produced was sent by [Defendant's technical sales manager], who was also the only witness [Defendant] identified as providing responses to Plaintiffs' interrogatories, in which [Defendant] flatly denied there being any defect in [its flooring] at any time.

Based upon its findings of misrepresentations and "other acts of misconduct," the trial court concluded that it would "impose additional sanctions against [Defendant] pursuant to North Carolina Rules of Civil Procedure 37(b)(2) and its inherent powers." The trial court sanctioned Defendant by striking its answer and entering default against it as to liability on Plaintiffs' claims for negligence, breach of implied warranty, and breach of express warranty. Defendant timely filed written notice of appeal.

On appeal, Defendant argues that the trial court's order striking its answer as a discovery sanction violated Defendant's due process rights, in that Defendant "was not provided notice in advance of the 14 December 2017 hearing that sanctions would be considered." In the alternative, Defendant contends that the trial court abused its

discretion because (1) no discovery violation occurred, and (2) the order was manifestly unsupported by reason.

## Grounds for Appellate Review

Although the trial court's order is interlocutory, Defendant maintains that it has the right to an immediate appeal because the order affects a substantial right, in that it sanctions Defendant in the form of striking its answer. Indeed, "[o]rders of this type have been described as affecting a substantial right," and are therefore immediately appealable. *Essex Grp. Inc. v. Express Wire Servs.*, 157 N.C. App. 360, 362, 578 S.E.2d 705, 707 (2003).

## Discussion

Defendant first argues that the trial court violated its due process rights by ordering discovery sanctions and striking Defendant's answer, because Defendant received "no notice that the trial court was considering sanctions and no notice of the basis for the sanctions imposed." We agree.

Rule 37 of the North Carolina Rules of Civil Procedure allows a trial court to sanction a party for discovery violations. *See* N.C. Gen. Stat. § 1A-1, Rule 37(b) (2017). However, "[n]otice and an opportunity to be heard prior to depriving a person of his property are essential elements of due process of law which is guaranteed by the Fourteenth Amendment of the United States Constitution," and these protections

apply with equal force to a trial court's authority to impose sanctions under Rule 37. *Griffin v. Griffin*, 348 N.C. 278, 280, 500 S.E.2d 437, 438 (1998).

In order for a trial court to impose sanctions against a party, the Due Process Clause requires that the party was first afforded the "right to notice both (1) of the fact that sanctions may be imposed, and (2) the alleged grounds for the imposition of sanctions." *Megremis v. Megremis*, 179 N.C. App. 174, 179, 633 S.E.2d 117, 121 (2006). A party is entitled to notice whether sanctions are imposed under Rule 37, *id.* at 178-79, 633 S.E.2d at 121, or under the trial court's inherent disciplinary authority, *Williams v. Hinton*, 127 N.C. App. 421, 426, 490 S.E.2d 239, 242 (1997) ("[T]he trial courts have ample power to control the conduct of attorneys through either the inherent power to discipline attorneys or by the use of contempt powers, or both, after proper notice and opportunity to be heard."). Clearly, "the complete absence of notice of potential sanctions . . . is not adequate notice." *Green v. Green*, 236 N.C. App. 526, 540, 763 S.E.2d 540, 550 (2014). "Our Court has held that a party sanctioned under Rule 37 ha[s] [constitutionally adequate] notice of sanctions where the moving party's written discovery motion clearly indicate[s] the party [is] seeking sanctions under Rule 37." *Megremis*, 179 N.C. App. at 179, 633 S.E.2d at 121.

In the instant case, Plaintiffs did not file a written motion seeking discovery sanctions against Defendant. At the time of the 14 December 2017 hearing, the only motions pending were (1) Defendant's motion to set aside the spoliation instruction,

and (2) Plaintiffs' motion to amend their complaint. Because Defendant had already consented to Plaintiffs' motion to amend the complaint, the only matter left to be resolved at the hearing was Defendant's motion to set aside the spoliation instruction.

After Defendant presented its argument as to why it should be relieved of the spoliation instruction, Plaintiffs responded that Defendant's conduct "so far justifies [the] spoliation order for trial in this case." However, drawing upon largely the same grounds alleged in their motion to amend, Plaintiffs further argued that the Spoliation Order should "be modified to make it more severe." Defendant protested, noting that Plaintiffs' argument was not responsive to Defendant's, and explaining that "we understood that today was not the time to argue that." Nevertheless, Defendant attempted to respond to Plaintiffs' contention that the allegations set forth in their motion to amend justified subjecting Defendant to further sanctions.

On appeal, Plaintiffs contend that the trial court's decision to impose additional sanctions following the 14 December 2017 hearing did not violate Defendant's due process rights, because the allegations in their motion to amend sufficiently "laid out the factual basis for additional sanctions." In other words, because Defendant had been served with Plaintiffs' motion to amend, and because the allegations therein could also serve as the "factual basis for additional sanctions," Defendant was provided sufficient notice of both (1) the fact that sanctions might be imposed, and (2) the grounds for such sanctions. Plaintiffs' argument is misplaced.

Our case law makes clear that parties have a due process right not only to notice of "the alleged grounds for the imposition of sanctions," but also "of the fact that sanctions may be imposed." *Zaliagiris v. Zaliagiris*, 164 N.C. App. 602, 609, 596 S.E.2d 285, 290 (2004), *disc. review denied*, 359 N.C. 643, 617 S.E.2d 662 (2005). In the instant case, however, Plaintiffs "filed no written motion seeking sanctions," *Green*, 236 N.C. App. at 540, 763 S.E.2d at 549, nor was there a pending motion to compel at the time of the 14 December 2017 hearing. While Plaintiffs' motion to amend the complaint contained allegations which, if true, might support the imposition of additional sanctions against Defendant, wholly absent from Plaintiffs' motion was any indication that those allegations were intended to serve as the basis for additional sanctions. *Cf. N.C. State Bar v. Barrett*, 219 N.C. App. 481, 488, 724 S.E.2d 126, 131 (2012) ("The allegations in the complaint did not . . . clearly apprise Defendant of the conduct which she would have to defend at the hearing." (quotation marks omitted)).

Moreover, the fact that Defendant attempted to defend against Plaintiffs' request for additional sanctions at the hearing is not evidence that Defendant did, in fact, receive proper notice. *See Zaliagiris*, 164 N.C. App. at 609, 596 S.E.2d at 290 ("The fact that the party against whom sanctions are imposed took part in the hearing and did the best [it] could do without knowing in advance the sanctions which might be imposed does not show a proper notice was given." (quotation marks omitted)).

Because the issue of sanctions was only "initially addressed at the hearing," it cannot be said that Defendant received proper notice and an opportunity to be heard, so as to render the trial court's order compliant with the demands of due process. *Green*, 236 N.C. App. at 540, 763 S.E.2d at 549.

The trial court exhibited abundant patience in this matter. Patience runs thin when a party repeatedly delays compliance with discovery requests and court orders. However, because Defendant received no notice whatsoever that it might be subject to sanctions based upon the facts alleged in Plaintiffs' motion to amend prior to the 14 December 2017 hearing, we must reverse the trial court's order. *See Megremis*, 179 N.C. App. at 181, 633 S.E.2d at 122 ("[D]efendant in the present case did not have notice *in advance* of the trial that sanctions might be imposed against her. Consequently, we conclude the trial court violated defendant's due process right to proper notice." (citation omitted)); *see also Green*, 236 N.C. App. at 540, 763 S.E.2d at 550 ("We can safely say that the complete absence of notice of potential sanctions . . . is not adequate notice.").

Finally, we note that Defendant's due process argument is properly presented for appellate review. Defendant was not deprived of its due process rights until the point at which the trial court *entered* its order imposing additional unnoticed sanctions, the order from which Defendant appeals. Nor did Defendant waive its right to due process at the 14 December 2017 hearing, as Plaintiffs contend. "[W]aiver of

OSI Rest. Partners, LLC v. Oscoda Plastics, Inc.

*Opinion of the Court*

the right to due process must be made voluntarily, knowingly, and intelligently." *Barrett*, 219 N.C. App. at 488, 724 S.E.2d at 131. At the hearing, Plaintiffs requested that the Spoliation Order "be modified to make [the sanction] more severe" and proceeded to outline the grounds supporting such action. Defendant, seemingly blindsided, protested that "we understood that today was not the time to argue that," and continued to assert the same throughout the remainder of the hearing. Defendant's statements demonstrate that it had not anticipated that it would be required to expand the scope of its argument beyond the spoliation instruction to include defenses to the imposition of additional sanctions. *See id.* ("Defendant stated during the hearing that 'my understanding is that the misrepresentation alleged in the complaint was the only issue that required me to formulate a defense for today.' This statement indicates Defendant believed she was facing only the allegation in the complaint and was not prepared to defend any others; it does not suggest that she was voluntarily, knowingly, and intelligently waiving her right to due process."). Accordingly, Defendant did not waive its right to due process, and appropriately asserts the same in support of its contention that the trial court's order imposing additional sanctions must be reversed.

## Conclusion

For the reasoning discussed herein, we reverse that portion of the trial court's order sanctioning Defendant by striking its answer to Plaintiffs' claims for

OSI Rest. Partners, LLC v. Oscoda Plastics, Inc.

*Opinion of the Court*

negligence, breach of implied warranty, and breach of express warranty. Having so concluded, we need not address Defendant's remaining challenges to the trial court's order.

REVERSED IN PART.

Judges STROUD and INMAN concur.