JAMES R. SMITH v. BARBARA WYITE SMITH

No. 668PA84

(Filed 3 July 1985)

**Divorce and Alimony § 30— equitable distribution—marital misconduct affecting value of marital assets—may be considered**

Misconduct during marriage which dissipates or reduces the value of marital assets for nonmarital purposes may properly be considered under G.S. 50-20(c)(12); marital fault or misconduct which does not adversely affect the value of marital assets is not a just and proper factor within the meaning of G.S. 50-20(c)(12). G.S. 50-20(c)(1)-(11), G.S. 50-16.2.

Justice MEYER dissenting.

Justice VAUGHN did not participate in the consideration or decision of this case.

Smith v. Smith

ON plaintiff's petition for discretionary review of the decision of the Court of Appeals reported at 71 N.C. App. 242, 322 S.E. 2d 393 (1984), vacating order by *Harrell, J.,* filed on 21 February 1983 in District Court, EDGECOMBE County. Heard in the Supreme Court 13 May 1985.

*Moore, Diedrick, Whitaker & Carlisle, by Joy Sykes and J. Edgar Moore, for plaintiff appellant.*

*Evans & Lawrence, by Antonia Lawrence and Robert A. Evans, for defendant appellee.*

MARTIN, Justice.

The primary issue in this case concerns whether marital fault or misconduct is a just and proper factor which may be found by a trial court under N.C.G.S. 50-20(c)(12) in determining an equitable division of marital property upon divorce. As we explain below, we hold that because it is consonant with the essential philosophy of equitable distribution, misconduct during the marriage which dissipates or reduces the value of marital assets for nonmarital purposes may properly be considered under N.C.G.S. 50-20(c)(12). Marital fault or misconduct which does not adversely affect the value of marital assets is not a just and proper factor within the meaning of N.C.G.S. 50-20(c)(12). We therefore modify and affirm the decision of the Court of Appeals.

This action began when plaintiff filed a complaint on 13 September 1982 seeking, inter alia, an absolute divorce from defendant, child support, and an equitable distribution of plaintiff and defendant's marital property. At hearings before the District Court, Edgecombe County, plaintiff and defendant stipulated that the sole issue for determination was the uncontested divorce and equitable distribution of their marital property. Among other things, the trial judge found as facts that plaintiff and defendant had been married since 1956 and had two children; that these two children had been living with plaintiff ever since defendant abandoned the family on 5 September 1981; that plaintiff was granted custody of the two children by a consent order filed 12 May 1982 in District Court, Edgecombe County; that the consent order filed 12 May 1982 divided the personal property of plaintiff and defendant; that plaintiff and defendant are owners as tenants by the entirety of a house and lot located at 116 Washington Place, Rocky

Mount, Edgecombe County; and that the plaintiff "was given sole possession of the marital home for the use and benefit of the two minor children until such time as the real property was equitably divided." Before concluding as a matter of law that the house and lot at 116 Washington Place was the only marital property to be divided, the trial judge further found as facts that:

14. The circumstances of the instant case and of the respective parties hereto warrant that an equal division of the marital property is not equitable based on the following facts:

a. The Defendant abandoned the Plaintiff and the two minor children willfully, without justification, without the knowledge or consent of the Plaintiff and without any intent to renew the marital relationship.

b. The Defendant is an excessive user of alcoholic beverages, having frequented illegal "whiskey houses" and having failed to properly supervise and care for the minor children prior to the separation.

c. On several occasions the Defendant left the children with a babysitter until very late at night and on one occasion the babysitter called the Plaintiff father at three o'clock a.m. to pick up the minor children.

d. During the year that the Plaintiff and Defendant have been separated, the Defendant has not visited with the children on a regular basis, having seen them approximately five or six times for a maximum period of a few hours, nor has the Defendant provided the minor children with clothing or other necessities.

e. The Defendant is not at the present time contributing anything towards the support and maintenance of the minor children born and adopted to the marriage of the Plaintiff and Defendant.

f. The Plaintiff needs continued possession and ownership of the former marital home for the benefit of the minor children.

g. The Defendant holds the degree of Master of Library Science and is gainfully employed with the Nash County

Board of Education earning a net income of approximately $11,000.00 per year.

h. The Plaintiff is retired from the Marine Corps and has been required to support the minor children and provide for all of the household bills including the mortgage payment for the former marital home, with his retirement pay of approximately $800.00 to $900.00 per month.

i. The plaintiff provided for the Defendant to obtain her degree of Master of Library Science, thus advancing her career as a teacher and allowing her to earn a better salary.

j. The Defendant [sic] has made all of the monthly payments on the outstanding indebtedness on the marital home from his salary and retirement from the Marine Corps.

k. The Plaintiff has masonry, carpentry and other similar skills and has contributed substantially to the value of the home by making such improvements as enclosing the carport, building a brick barbeque, insulating, painting and other improvements. The Plaintiff has also provided the purchase price of the materials necessary to make these improvements.

l. During the time that the Plaintiff was overseas in connection with his service in the military, the Defendant provided the minor children with basic care such as cooking meals and buying clothes, the majority of the expenses being paid for by the Plaintiff father; however, the Defendant has not contributed in a meaningful way to the marriage since then, either financially or emotionally.

m. In all likelihood, the Plaintiff father will be required to provide all the costs of educating the minor children.

n. Any funds awarded to the Defendant mother from the equity in the former marital home would probably not be used in any manner to benefit the minor children, based upon the Defendant's past history of alcoholism and lack of responsibility.

The trial court then concluded, inter alia, that "[b]ased on the circumstances of the instant case, an equal division of the marital

property would not be equitable."[1] The court then entered an order (1) awarding plaintiff an absolute divorce from defendant, (2) awarding plaintiff sole ownership of the former marital home and lot at 116 Washington Place, Rocky Mount, (3) ordering defendant to execute a deed conveying all of her right, title, and interest in the marital home to plaintiff, and (4) decreeing that plaintiff shall be solely responsible for payment of the outstanding indebtedness on said property.[2] Defendant excepted to the entry of the order, assigning as error that part of the order which granted exclusive ownership of the marital home to plaintiff. Defendant aptly perfected her appeal to the Court of Appeals, and that court issued an opinion on 6 November 1984 vacating the judgment and remanding for further proceedings. Plaintiff's petition to this Court for discretionary review was allowed 30 January 1985.

N.C.G.S. 50-20(c) provides that upon divorce:

(c) There shall be an equal division by using net value of marital property unless the court determines that an equal division is not equitable. If the court determines that an equal division is not equitable, the court shall divide the marital property equitably. Factors the court shall consider under this subsection are as follows:

(1) The income, property, and liabilities of each party at the time the division of property is to become effective;

(2) Any obligation for support arising out of a prior marriage;

(3) The duration of the marriage and the age and physical and mental health of both parties;

(4) The need of a parent with custody of a child or children of the marriage to occupy or own the marital residence and to use or own its household effects;

---

1. Neither plaintiff nor defendant excepted to any of the trial court's findings of fact or conclusions of law.

2. For a general discussion of considerations that may arise when the marital home is among a limited number of assets to be distributed pursuant to an equitable distribution statute, see Comment, *The Marital Home: Equal or Equitable Distribution?*, 50 U. Chi. L. Rev. 1089 (1983).

(5) The expectation of nonvested pension or retirement rights, which is separate property;

(6) Any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services, or lack thereof, as a spouse, parent, wage earner or homemaker;

(7) Any direct or indirect contribution made by one spouse to help educate or develop the career potential of the other spouse;

(8) Any direct contribution to an increase in value of separate property which occurs during the course of the marriage;

(9) The liquid or nonliquid character of all marital property;

(10) The difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest, intact and free from any claim or interference by the other party;

(11) The tax consequences to each party; and

(12) Any other factor which the court finds to be just and proper.

Although several of the trial court's findings of fact fall under the first eleven factors listed in 50-20(c), several others do not and thus must fall, if anywhere, under the catchall factor, 50-20(c)(12). Defendant contends that some of the findings which do not come within 50-20(c)(1)-(11) concern so-called marital fault, which, defendant alleges, is not a "just and proper" factor under the equitable distribution statute.

To decide whether marital misconduct or fault may be properly considered under 50-20(c)(12), we examine the legislative intent behind the equitable distribution statute.

As stated recently in *White v. White*, 312 N.C. 770, 775, 324 S.E. 2d 829, 832 (1985), "[e]quitable distribution reflects the idea

that marriage is a partnership enterprise to which both spouses make vital contributions and which entitles the homemaker spouse to a share of the property acquired during the relationship." In other words, "[t]he goal of equitable distribution is to allocate to divorcing spouses a fair share of the assets accumulated by the marital partnership." *Dissipation of Assets*, 1 Equitable Distribution Journal 1, 1 (No. 6, June 1984). *See also* L. Golden, *Equitable Distribution of Property* 255 (1983). The heart of the theory is that "both spouses contribute to the economic circumstances of a marriage, whether directly by employment or indirectly by providing homemaker services." L. Golden, *supra*, at 3.[3] The equitable distribution statute provides that, unless proven otherwise, such contributions are deemed to be equal during the course of the marriage. *White*, 312 N.C. 770, 324 S.E. 2d 829. Thus, even though title to the marital assets may be listed in the name of only one of the spouses during the course of the marriage, "the statute is a legislative enactment of public policy so strongly favoring the equal division of marital property that an equal division is made *mandatory* [upon divorce] 'unless the court determines that an equal division is not equitable.' N.C.G.S. 50-20 (c)." *Id.* at 776, 324 S.E. 2d at 832.

Factors that a trial court must consider when making this determination are set forth in N.C.G.S. 50-20(c). All of the first eleven factors in the statute concern the economy[4] of the marriage, i.e., the source, availability, and use by a wife and husband of economic resources during the course of their marriage. By the principle of ejusdem generis, we must construe the statutory twelfth catchall factor consistently with the legislative purpose inherent in the first eleven statutory factors.

---

3. As many commentators emphasize, these roles frequently overlap. "Increasingly in contemporary society the homemaker spouse will also be employed while the primary wage earner will perform many household and child rearing functions." L. Golden, *Equitable Distribution of Property* 2 n. 2 (1983).

4. The term "economy" has been defined to mean: "I. Management of a house; management generally. 1. The art or science of managing a household, *esp.* with regard to household expenses . . . b. The manner in which a household, or a person's private expenditure, is ordered . . . . c. *concr.* A society ordered after the manner of a family." 3 Oxford English Dictionary 35 (1961). The term derives from the Greek words *oikonomos*, "one who manages a household," *oikos*, "house," and *nomos* (*nemein*), "manage or control."

Smith v. Smith

> "In the construction of statutes, the *ejusdem generis* rule is
> that where general words follow a designation of particular
> subjects or things, the meaning of the general words will or-
> dinarily be presumed to be, and construed as, restricted by
> the particular designations and as including only things of
> the same kind, character and nature as those specifically
> enumerated."

*State v. Lee*, 277 N.C. 242, 244, 176 S.E. 2d 772, 774 (1970)
(quoting *State v. Fenner*, 263 N.C. 694, 697-98, 140 S.E. 2d 349,
352 (1965)).

In accord with the economic contribution theory of equitable
distribution, it is clear that only items affecting the marital
economy are considered under the first eleven factors of N.C.G.S.
50-20(c).[5] Thus, under 50-20(c)(12), the only other considerations
which are "just and proper" within the theory of equitable dis-
tribution as expressed by 50-20(c)(1)-(11) are those which are rele-
vant to the marital economy. Therefore, we hold that marital
fault or misconduct of the parties which is not related to the eco-
nomic condition of the marriage is not germane to a division of
marital property under 50-20(c) and should not be considered.
*Blickstein v. Blickstein*, 99 A.D. 2d 287, 472 N.Y.S. 2d 110 (1984);
*Chalmers v. Chalmers*, 65 N.J. 186, 194, 320 A. 2d 478, 483 (1974)
("[t]he concept of fault is not relevant to such distribution since all
that is being effected is the allocation to each party of what really
belongs to him or her"). *See Hinton v. Hinton*, 70 N.C. App. 665,
321 S.E. 2d 161 (1984). *See generally* L. Golden, *supra*, at 255.

The irrelevance to equitable distribution of misconduct not
affecting the marital economy may be contrasted with conduct
relevant to an award of alimony to a dependent spouse under
N.C.G.S. 50-16.2. Under that statute many kinds of marital mis-

---

5. We note that an additional factor concerning the marital economy was
recently added to N.C.G.S. 50-20(c). On 30 April 1985 our General Assembly
enacted a bill reading in relevant part:

"Section 1. G.S. 50-20(c) is amended by deleting the word 'and' after
subsection (11) and by inserting a new subsection following subsection (11) to
read: '(11a) Acts of either party to maintain, preserve, develop, or expand; or
to waste, neglect, devalue or convert such marital property, during the period
after separation of the parties and before the time of distribution; and'. Sec. 2.
This act shall become effective October 1, 1985."

conduct by the supporting spouse constitute grounds for an award of alimony. While noneconomic marital fault is thus relevant to alimony, it is irrelevant to the equitable distribution of marital property. This distinction is recognized by N.C.G.S. 50-20 (f), which states that "[t]he court shall provide for an equitable distribution without regard to alimony. . . ." *Accord* Va. Code § 20-107.3(F) (Supp. 1984). Although an award of alimony to a dependent spouse may be justified because of noneconomic marital misconduct by the supporting spouse, the only fault or misconduct that is "just and proper" under N.C.G.S. 50-20(c)(12) is that which dissipates or reduces marital property for nonmarital purposes. *See, e.g.,* Cal. Civ. Code § 4800(b)(2) (West Supp. 1985); Del. Code Ann. tit. 13, § 1513(a)(6) (1981); Ind. Code Ann. § 31-1-11.5-11 (b)(4) (Burns Cum. Supp. 1984); S.D. Codified Laws Ann. § 25-4-45.1 (1984); *In re Marriage of Schultz,* 105 Cal. App. 3d 846, 164 Cal. Rptr. 653 (1980); *In re Marriage of Kaladic,* 41 Colo. App. 419, 589 P. 2d 502 (1978); *In re Marriage of Block,* 110 Ill. App. 3d 864, 870-71, 441 N.E. 2d 1283, 1288-89 (1982); *In re Marriage of Hellwig,* 100 Ill. App. 3d 452, 426 N.E. 2d 1087 (1981); *Wireman v. Wireman,* 168 Ind. App. 295, 343 N.E. 2d 292 (1976); *Sharp v. Sharp,* 58 Md. App. 386, 473 A. 2d 499 (1984); *Grothe v. Grothe,* 590 S.W. 2d 238 (Tex. Civ. App. 1979); *In re Marriage of Anstutz v. Anstutz,* 112 Wis. 2d 10, 331 N.W. 2d 844 (Wis. Ct. App. 1983). Such conduct might be, e.g., the conveyance by one spouse of marital assets in contemplation of divorce. *See Hursey v. Hursey,* 326 S.E. 2d 178 (S.C. App. 1985). *Cf.* Cal. Civ. Code § 3518 (1970). Of course, such economic misconduct, if proved, is only one factor for the court to consider under N.C.G.S. 50-20(c) when determining whether an equal division of property is equitable. *See Armstrong v. Armstrong,* 181 Ind. App. 343, 346-47, 391 N.E. 2d 855, 857 (1979). Under 50-20(c) the trial court is required to consider all twelve factors listed in the statute when determining whether an equal division of marital property is equitable.

In the instant case a number of the findings of fact contained in the trial court's judgment pertain to fault or misconduct not affecting the value of the parties' marital property. Because the consideration of these factors was error, we hold that the case must be remanded for further proceedings not inconsistent with the principles enunciated in this opinion.

The decision of the Court of Appeals is

Modified and affirmed.

Justice VAUGHN did not participate in the consideration or decision of this case.

Justice MEYER dissenting.

I respectfully dissent. The majority finds that all of the first eleven listed factors concern the "economy of the marriage." Having so concluded, the majority, by the principle of *ejusdem generis*, construes factor (12), "*Any* other factor which the court finds to be just and proper" (emphasis added), to include only "economic fault." I disagree that all of the other eleven factors relate to economic matters—for instance, factor (3) "The duration of the marriage . . ." which has nothing at all to do with "the economy of the marriage."

Beyond the foregoing I believe that the legislature fully intended that the trial judge could and would consider what I shall call "moral" fault, or misconduct which causes the marriage to breakup—adultery, spouse abuse, alcoholism, drug abuse, incest, etc. Obviously, such misconduct would *not* fit within the narrow category of "economic" fault. If "moral" fault cannot be considered under factor (12), it cannot be considered at all in the distribution of marital property.

The majority implies that the proper arena for the consideration of non-economic fault is the determination of alimony payments. First, alimony, for one reason or another, is not always an issue before the court in divorce cases. Second, even when alimony is at issue, the "innocent" spouse may not be entitled to it because he or she is not a dependent spouse or has remarried, or for other reasons. In such situations, even the most egregious moral misconduct which has caused the marriage to end is without legal consequence and the equal distribution of marital property may have to be found equitable in spite of it. If the majority has thus incorrectly interpreted the legislature's intent, that body can readdress the issue and speak more plainly.

I would also add that on reconsideration of this case upon remand, the trial judge could, under the majority's interpretation, reach the same result by considering only factors constituting "economic" fault, such as factor (4).