NO. COA14-150

NORTH CAROLINA COURT OF APPEALS

Filed: 7 October 2014

MICHAEL L. GREEN,
    Plaintiff,

v.                                    Nash County
                                      No.  09-CVD-2527

JANA M. GREEN,
    Defendant.


Appeal by defendant from judgment entered 12 July 2013 by
Judge John J. Covolo in District Court, Nash County.  Heard in
the Court of Appeals 12 August 2014.

> *Teresa DeLoatch Bryant, for plaintiff-appellee.*
>
> *Judith K. Guibert, for defendant-appellant.*


STROUD, Judge.


Defendant Estate of Jana M. Green[1] appeals from a judgment
on equitable distribution entered by the District Court, Nash
County on 12 July 2013.  On appeal, defendant argues, *inter
alia*, that the trial court erred by imposing sanctions against
her which decreed that she had "forfeited her right to file her
equitable distribution affidavit or any other documents or

---

[1] Defendant died during the pendency of this appeal, on 7
February 2014, and by order of this Court her estate was
substituted as a party to this appeal.  We will nevertheless
refer to the appellant as "defendant" in this opinion.

matters pertaining to same and that the identification, valuation, and classification of assets and debts as set forth in the Plaintiff's said affidavit shall be those that shall be considered by the Court." The record indicates that the order which set a deadline of 4 December 2012 for the filing of defendant's equitable distribution affidavit was entered *after* 4 December 2012, on 10 December 2012, so that she had no notice of the deadline until after it had passed. Due to the lack of notice and other serious procedural and legal errors, we reverse the order of 10 December 2012, the 19 December 2012 judgment, and the 12 July 2013 judgment thereafter entered.

## I. Background

Plaintiff and defendant were married in 1990 and separated from one another on or about 15 October 2009. On 1 December 2009, plaintiff filed a complaint for divorce from bed and board and equitable distribution. On 28 December 2009, attorney Larry A. Manning obtained an extension of time for defendant to answer, extending the time to 30 January 2009. Through defendant's counsel Mr. Manning, defendant filed her answer and counterclaims for divorce from bed and board, post-separation support, equitable distribution, and attorney's fees on 2 February 2010. On 5 August 2010, plaintiff filed a request for

production of documents regarding defendant's counterclaim for post-separation support, which had been served upon defendant, through her counsel; on the same date, plaintiff also filed a reply to defendant's counterclaims, which was also served upon defendant's counsel. At this point, the record falls silent for nearly two years.

The next document which appears in the supplement to the record is a hand-written letter, dated 3 February 2012, from defendant to the Nash County Clerk of Court, which states as follows: "Please send any documents or order in this case to [defendant's name and an address in Indiana.] Mr. Larry Manning has refused to notify or forward any court dates, motions, orders in this case so I can have a chance to protect my right." The record does not contain a motion for withdrawal by Mr. Manning, any order releasing him as the attorney of record for defendant, nor any indication of why he disappeared from the case.[2]

---

[2] "An attorney at law is a sworn officer of the court with an obligation to the public, as well as his clients, for the office of attorney at law is indispensable to the administration of justice. The attorney's obligation crystallizes into one of noblesse oblige. As between the attorney and his client the relationship may ordinarily be dissolved in good faith at any time, but before an attorney of record may be released from litigation he must satisfy the court that he is justified in withdrawing. The first requirement for his withdrawal is proof

On 17 October 2012, the trial court entered the "Seventh District Judge Designation on Equitable Distribution of Property[;]" ("Judge Designation") (original in all caps), this document stated that "the parties hereby request designation of John J. Covolo as the judge to determine the equitable distribution claim." Although the "Judge Designation" document has blanks for the signatures of attorneys for both plaintiff and defendant to agree to Judge Covolo, the document was signed only by R. D. Kornegay, attorney for plaintiff; defendant's attorney's signature line is blank. The "Judge Designation" document also has a second section which states that "[t]he parties are unable to agree upon designation of a Judge to determine the equitable distribution issues. [(sic)] hereby applies to the Court for designation of a Judge." Plaintiff's attorney signed the second section of the "Judge Designation"

---

of timely notice to his client." *Smith v. Bryant*, 264 N.C. 208, 211, 141 S.E.2d 303, 306 (1965) (citations and quotation marks omitted). Rule 16 of North Carolina's General Rules of Practice for the Superior and District Courts, entitled "Withdrawal of Appearance[,]" provides that "No attorney who has entered an appearance in any civil action shall withdraw his appearance, or have it stricken from the record, except on order of the court. Once a client has employed an attorney who has entered a formal appearance, the attorney may not withdraw or abandon the case without (1) justifiable cause, (2) reasonable notice to the client, and (3) the permission of the court." North Carolina's General Rules of Practice for the Superior and District Courts, rule 16.

document as well, so it is unclear whether the parties had agreed on the designation or if they did not agree. In any event, the Chief Judge of District Court in Nash County, William C. Farris, signed the "Judge Designation" document, designating Judge Covolo to determine the equitable distribution claim.

On 22 October 2012, nearly three years after plaintiff filed his equitable distribution complaint, he filed his equitable distribution affidavit ("ED Affidavit").[3] There is no certificate of service indicating that plaintiff's ED Affidavit was served upon defendant or any counsel for defendant.[4] On the

---

[3] North Carolina General Statute § 50-21(a) requires that "[w]ithin 90 days after service of a claim for equitable distribution, the party who first asserts the claim shall prepare and serve upon the opposing party an equitable distribution inventory affidavit listing all property claimed by the party to be marital property and all property claimed by the party to be separate property, and the estimated date-of-separation fair market value of each item of marital and separate property." N.C. Gen. Stat. § 50-21(a) (2009). Furthermore, in District Court in Nash County, North Carolina Rule 4 of the "Rules for Trial and Settlement Procedures in Equitable Distribution and Other Family Financial Cases[,]" ("Local Rules") (original in all caps), the ED Affidavit "required by G.S. 50-21(a) shall be prepared using the form of affidavit attached to the Rules. Unless extended for good cause by the court, statutory time limits on the exchange of properly prepared affidavits are to be strictly observed. There shall be a presumption that sanctions are to be imposed upon willful non-compliance." Local Rules, rule 4.

[4] According to the Cc: line of the letter from plaintiff's counsel to the Nash County Assistant Clerk of Court, requesting that the ED Affidavit be filed, he sent both plaintiff and

same date, plaintiff filed a notice of hearing upon the equitable distribution claim, setting the hearing for 6 November 2012, and this notice of hearing was served upon defendant by mail to her at the address she provided in Indiana.[5] The record contains no indication that plaintiff had complied with any of the requirements of North Carolina General Statute § 50-21(d), including a scheduling and discovery conference[6], possible mediation[7], and a final pretrial conference.[8]

Thereafter, the trial court entered an "ORDER OF CONTINUANCE" which continued "this matter" to 4 December 2012 ("Continuance Order"). We cannot discern exactly what was

---

defendant a copy of the ED Affidavit on or about 17 October 2012.

[5] The notice also stated that "[t]he issuing party is ready for hearing upon the issues to be calendared, but the parties have not agreed upon the court date." (Emphasis in original.)

[6] "Within 120 days after the filing of the initial pleading or motion in the cause for equitable distribution, the party first serving the pleading or application shall apply to the court to conduct a scheduling and discovery conference." N.C. Gen. Stat. § 50-21(d) (2009).

[7] Mediation is required by Rule 7 of the Local Rules prior to scheduling an equitable distribution case for trial, unless the case has been exempted from mediation. *See* Local Rules, rule 7. Mediation is to "be completed within 90 days of the scheduling conference or 210 days of the filing of the complaint, whichever occurs first." Local Rules, rule 10(c).

[8] Rule 10(d) of the Local Rules requires that "[a] final pre-trial conference shall be held within 60 days of the completion of mediation." Local Rules, rule 10(d).

continued to when by the Continuance Order, nor could counsel at the oral argument of this case explain the meaning of the Continuance Order. Normally hearings are continued to a date in the future instead of the past, but here though the Continuance Order was filed on 6 November 2012, the trial court signed the order on 6 December 2012. To be clear, the trial court did not even abbreviate the date but wrote out "6th . . . December[.]" We assume that the clock for the Clerk of Court's office was working properly, so perhaps the trial judge inadvertently wrote the wrong month when signing the Continuance Order. But there were court dates set for both 6 November 2012 -- plaintiff's notice of hearing for the equitable distribution claim -- and 4 December 2012 -- Continuance Order for "this matter[.]" Furthermore, though the Continuance Order provides numerous reasons for the trial court to check for why the matter is being continued, none are checked on this Continuance Order. Lastly, in the consent portion of the Continuance Order, only plaintiff's attorney has signed. There is no indication in the record that the Continuance Order was served upon defendant or any counsel for defendant.

On 10 December 2012, the trial court entered an order ("ED Affidavit Order") which states that it was based upon the

hearing held on 6 November 2012, "upon the Plaintiff's request for the Court to structure a time frame within which any and all matters pertaining to equitable distribution or any remaining issues raised in the pleading would be disposed of . . . ." [9] Defendant was not present or represented. The ED Affidavit Order stated as follows:

> [I]t appearing that the Plaintiff has in fact filed his equitable distribution affidavit in timely fashion but the Defendant, for whatever reason has failed or refused to do so; and it appears as if the Defendant has not appeared in court but has had some alleged reason not to be in court each occasion the case has been set for trial; and on the occasion first mentioned hereinabove, the Defendant forwarded a correspondence dated November 5, 2012, which she did not copy Plaintiff's attorney with (with the exception of the copy of a purported medical document at the bottom thereof) which was either in the file or provided to the presiding judge by the Clerk when the calendar was called; and Plaintiff's attorney indicated to the Court that they thought it was frivolous, unreasonable, and inequitable for the Defendant to be able to continually avoid a hearing in this case for reasons that cannot

---

[9] We note that the Local Rules, particularly Rule 10, provide detailed "timelines" for equitable distribution cases. *See* Local Rules, rule 10(c). Under Rule 11, "[f]or good cause the Presiding Judge may modify the [rule 10] timelines[,]" but the record contains no indication of any order modifying the rules. *See* Local Rules, rule 11. Perhaps the 10 December 2012 order could be considered as an order modifying the requirements of the rules except that it does not mention any statute or local rule nor does it mention any "good cause" for modification. *Id.*

be substantiated when they have otherwise complied with the law and needed for the Court to take action to structure time limits within which things could happen; and the Court reviewed the medical document at the bottom of the Plaintiff's November 5 correspondence but could not decipher or understand the handwriting therein and did not find the letter or the attachment to be reasonable under the circumstances; and, based upon the pleadings in the file and the motion of Plaintiff's counsel, the Court does ORDER, ADJUDGE, AND DECREE as follows:

1. That the Defendant shall have until December 4, 2012 in which to file her equitable distribution affidavit, which is already well passed [(sic)] the time allowed by law, and should she not have her affidavit filed by that time her right to do so shall be forfeited and she and the Court will be bound by the information set forth in the Plaintiff's Equitable Distribution Affidavit and thereafter she will not be allowed any additional time within which to file said document.

2. That if either party desires any further discovery, it shall be completed on or before December 4.

3. That at the December 4 calendar, the Court shall determine a final date for trial in this matter.

4. For such other and further relief as the Court seems just and proper in the nature of this cause.

The record contains no indication that the ED Affidavit Order was served on defendant or any counsel for defendant.

The letter regarding a medical excuse referred to in the ED Affidavit Order was a letter from defendant, dated 5 November 2012, in which she stated that her surgeon, Dr. Benjamin Chiu, of Kokomo, Indiana, had forbidden her from traveling to the hearing on 6 November 2012. At the bottom of defendant's letter was a handwritten note, which we have no difficulty deciphering, on a prescription form for Howard Regional Health System, of Kokomo, Indiana, stating that "Pt. to be excused from travel/work until follow up visit in 1-2 weeks[.]" Defendant also stated in the letter that she had told plaintiff's attorney the dates she could attend court, and he set the 6 November 2012 date against her wishes.

Defendant's medical condition was a recurring theme throughout the case. Defendant's counterclaim alleged that she suffered "from a number of medical conditions" which made "her unable to support herself." Plaintiff replied that defendant "malingers" and would "say or do anything that she can to not work an honest day's work." But the record contains no substantive evidence regarding defendant's medical condition. In addition, despite the trial court's statement in the ED Affidavit Order that "the Defendant has not appeared in court but has had some alleged reason not to be in court each occasion

the case has been set for trial[,]" our record contains no indication whatsoever that this case had ever been set for any sort of hearing before 6 November 2012.

On 4 December 2012, the matter came on for hearing again, and a judgment was filed on 19 December 2012 as a result of this hearing ("Sanctions Order"). The Sanctions Order stated as follows:

> [I]t appearing that the matter was before the Court based upon the Plaintiff's request (all of which was relayed to the Court at its last session when Judge Covolo was presiding) asking that the Defendant forfeit her right to file any further equitable distribution documents for her failure to have her equitable distribution affidavit filed with the Court the date first referenced hereinabove, and for the Court to set this case before the undersigned Judge Presiding, who is the designated judge, for the final equitable distribution hearing on January 8, 2013; and it appearing that the Plaintiff was in court with his attorney of record, Robert D. Kornegay, Jr., and that the Defendant was not in court, although attorney Katherine Fisher informed the Court that she had been contacted by the Defendant, and had a telephone conference scheduled with her the following day (December 5) at 3:00 p.m.; and, based upon the pleadings in the file, the statement of counsel, and the proceedings, the Court does make the following FINDINGS OF FACT:
>
> 1. That all parties have had due and adequate notice of the proceedings and that the parties and the subject party are properly before the Court.

2. That the last order of the Court gave to the Defendant the right and opportunity to file her equitable distribution affidavit by the date first referenced hereinabove, but that no pleadings of any other or further type have been filed with or received by the Court. That the Defendant has had plenty [of] adequate time under all the circumstances to file her pleadings and for her lack or inability of having done so, the Court does find that it is not unreasonable that the Defendant has therefore forfeited any further right to file her equitable distribution affidavit and the identification, valuation, and classification of all said assets and debts as provided by the Plaintiff in his equitable distribution affidavit shall hereinafter be those values that shall be considered and heard by the Court.

3. That there has been discovery pending since August of 2010, whereby the Plaintiff filed discovery on the Defendant and she has not made any valid attempt to provide the information required therein by law.

4. That this matter has been pending for a long period of time and it is right, fair, and reasonable that the parties should be able to move forward with their lives and conclude the issues raised in the litigation and therefore the case will be set for trial on the issue of equitable distribution of property at the undersigned Judge's next session of court for January 8, 2013.

NOW, THEREFORE, based upon the foregoing Findings the Court makes the following CONCLUSIONS OF LAW:

1. That all parties have had due and adequate notice of these proceedings and that the parties and the subject matter are properly before the Court.

2. That the Defendant has forfeited her right to file her equitable distribution affidavit or any other documents or matters pertaining to same and that the identification, valuation, and classification of assets and debts as set forth in the Plaintiff's said affidavit shall be those that shall be considered by the Court.

NOW, THEREFORE, based upon the foregoing Findings and Conclusions the Court does hereby ORDER, ADJUDGE AND DECREE:

1. That the Defendant has forfeited her right to file her equitable distribution affidavit or any other documents or matters pertaining to same and that the identification, valuation, and classification of assets and debts as set forth in the Plaintiff's said affidavit shall be those that shall be considered by the Court.

2. That this case is hereby set for hearing on equitable distribution of property at the Undersigned's next session of court for January 8, 2013.

3. That this matter shall be retained for further consideration by the court.

The record contains no indication that the Sanctions Order was served upon defendant or any counsel for defendant.

The 8 January 2013 court date was continued, by consent of both plaintiff and defendant, to the March or April 2013 term of

court with Judge Covolo. An order for peremptory setting for 5 March 2013 was filed on 17 January 2013, and this was served upon defendant. On 23 January 2013, plaintiff's counsel also filed a notice of hearing on equitable distribution for 5 March 2013, and this was served upon defendant.

The equitable distribution trial was held on 5 March 2013. Plaintiff was present with his attorney and defendant was present, *pro se*. The 12 July 2013 judgment ("ED Judgment") stated,

> the Defendant has forfeited her right to file her equitable distribution affidavit or any other documents or matters pertaining to the same by virtue of a Judgment dated December 14, 2012, of record in this matter, and that as a result thereof the Plaintiff's equitable distribution affidavit, and his documentation in support thereof, in addition to the testimony of the parties, and any documentation offered by the Defendant, was the sole source of the Court's identification, valuation, and classification of marital property; and, based upon the pleadings in the file, the testimony of the parties and their documentary evidence, and the statement of counsel, the Court does make the following FINDINGS OF FACT[.]

Ultimately, the trial court made findings of fact consistent with plaintiff's ED Affidavit and evidence and awarded an unequal distribution of property in favor of plaintiff. Defendant filed a *pro se* "NOTICE OF APPEAL" appealing "the

ruling and judgment of the Nash County District Court entered on July 12, 2013[.]"

## II. Jurisdiction

Defendant asserts on appeal that the ED Judgment of 12 July 2013 is a final, appealable order, and she also challenges the "December 10, 2012 discovery order and the December 19, 2012 sanctions Judgment" which were interlocutory orders and not immediately appealable; this is true, but defendant also failed to give notice of appeal identifying the ED Affidavit Order and the Sanctions Order, so we must first consider whether this Court has jurisdiction to consider her appeal as to these decisions.

> We note that while Rule 3(d) of the Rules of Appellate Procedure provides that the notice of appeal shall designate the judgment or order from which appeal is taken, N.C. Gen. Stat. § 1-278 (2013) provides: Upon an appeal from a judgment, the court may review any intermediate order involving the merits and necessarily affecting the judgment. This Court has held that even when a notice of appeal fails to reference an interlocutory order, in violation of Rule 3(d), appellate review of that order pursuant to N.C. Gen. Stat. § 1-278 is proper under the following circumstances: (1) the appellant must have timely objected to the order; (2) the order must be interlocutory and not immediately appealable; and (3) the order must have involved the merits and necessarily affected the judgment. All three conditions must be

met.

*Tinajero v. Balfour Beatty Infrastructure*, ___ N.C. App. ___, ___, 758 S.E.2d 169, 175 (2014) (citation and quotation marks omitted).

We find that all three conditions for defendant's appeal as to the ED Affidavit Order and the Sanctions Order have been met. *See id.* As to the timeliness of defendant's objection, based upon the record before us, we cannot determine when, if ever, the ED Affidavit Order and the Sanctions Order were served upon defendant. Clearly defendant became aware of the ED Affidavit Order and the Sanctions Order at some point in time, but there is no certificate of service[10] on either document. Under North Carolina General Statute § 1A-1, Rule 58, the ED Affidavit Order and the Sanctions Order should have been served upon defendant within three days of their entry:

> Subject to the provisions of Rule 54(b), a judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court. The party

---

[10] North Carolina General Statute § 1A-1, Rule 5(b) requires that "[a] certificate of service shall accompany every pleading and every paper required to be served on any party or nonparty to the litigation, except with respect to pleadings and papers whose service is governed by Rule 4. The certificate shall show the date and method of service or the date of acceptance of service and shall show the name and service address of each person upon whom the paper has been served." N.C. Gen. Stat. § 1A-1, Rule 5(b) (2009).

> designated by the judge or, if the judge does not otherwise designate, the party who prepares the judgment, shall serve a copy of the judgment upon all other parties within three days after the judgment is entered. Service and proof of service shall be in accordance with Rule 5.

N.C. Gen. Stat. § 1A-1, Rule 58 (2009). Under North Carolina Rule of Appellate Procedure Rule 3, defendant would have had 30 days to appeal from the ED Affidavit Order or Sanctions Order if she had been served with them "within the three day period prescribed by Rule 58 of the Rules of Civil Procedure; or (2) within 30 days after service upon the party of a copy of the judgment if service was not made within that three day period[.]" N.C.R. App. P. 3(c). Since we do not know when or if defendant was ever "served" with the ED Affidavit Order or the Sanctions Order, we cannot discern how she would have made any more timely objection to the ED Affidavit Order and the Sanctions Order than she has by her appeal of the ED Judgment resulting from them.

Next, both the ED Affidavit Order and Sanctions Order were interlocutory, as they did not make a final determination of all claims and issues. *See Hamilton v. Mortg. Info. Servs., Inc.*, 212 N.C. App. 73, 76, 711 S.E.2d 185, 188 (2011) ("An interlocutory order is one made during the pendency of an

action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." (citation and quotation marks omitted)).

Finally, both the ED Affidavit Order and Sanctions Order "involved the merits and necessarily affected the judgment." *Tinajero*, ___ N.C. App. at ___, 758 S.E.2d at 175. As a result of the ED Affidavit Order and Sanctions Order defendant could not challenge plaintiff's evidence as to the identification, classification, and valuation of the martial property and debts; these are the central issues in any equitable distribution claim. Thus, we have jurisdiction to consider defendant's appeal as to the ED Affidavit Order and Sanctions Order. *See Tinajero* ___ N.C. App. at ___, 758 S.E.2d at 175.

### III. Imposition of Sanctions Without Notice

Defendant first argues that "the trial court erred in imposing sanctions against defendant which prohibited her from filing an equitable distribution affidavit and prevented her from presenting her case." (Original in all caps.) The sanctions were imposed in the trial court's Sanctions Order, which found that defendant had failed to comply with the ED Affidavit Order. Defendant contends that the ED Affidavit

Order, which set a 4 December 2012 deadline for filing her ED Affidavit, had not yet been entered when the deadline had passed. We need not engage in any analysis to determine that defendant's argument is factually correct -- 10 December 2012 is *after* 4 December 2012. Even if defendant had been present in court on 6 November 2012, when it seems that the trial court addressed this issue, an order is not *entered* until it is signed and filed, and the ED Affidavit was signed on 24 November 2012 and filed on 10 December 2012. *See* N.C. Gen. Stat. § 1A-1, Rule 58 (2011) ("Subject to the provisions of Rule 54(b), a judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court.")

Plaintiff does not even attempt to argue in his brief that defendant had notice of the 4 December 2012 deadline, but in his approximately two page argument which is devoid of citation of any authority, claims that defendant had "a full and fair opportunity to present her case at trial[,]" (original in all caps), because at trial the trial court did permit her to testify and asked her "broad and open-ended questions[.]" Plaintiff also contends that the 10 December 2012 order actually gave defendant an *extension* of time to file her ED Affidavit, an argument which is directly contradicted by the order itself.

Plaintiff argues that defendant "began representing herself" on 3 February 2012 -- this fact is not supported by the record -- and that she "was served on 17 October 2012 with the Plaintiff's Equitable Distribution Inventory Affidavit[.]" Actually, the only indication in the record of the service of plaintiff's ED Affidavit is the Cc: line at the bottom of plaintiff's counsel's transmittal letter to the Assistant Clerk of Court, asking that plaintiff's ED Affidavit be filed; there is no certificate of service on defendant. But even if we assume that plaintiff is correct, and plaintiff mailed his ED Affidavit to defendant on 17 October 2012, plaintiff argues that defendant's ED Affidavit would have been due on 19 November 2012.[11] Plaintiff claims that since the ED Affidavit Order deadline was 4 December 2012, the ED Affidavit Order actually gave defendant 15 *extra* days to file her ED Affidavit, beyond the time allowed by North Carolina General Statute § 50-21. Plaintiff's argument is inexplicable, given the finding in the ED Affidavit Order, based upon the stated hearing date of 6 November 2012, that "Defendant, for whatever reason *has* failed or refused to" file her ED Affidavit in a "timely fashion[.]" (Emphasis added.) In addition, the ED

---

[11] Plaintiff's brief actually argues that "Defendant's EDIA was due on or before 19 November 2014[;]" we assume plaintiff means 2012, as that was the year when the 10 December 2012 order was entered.

Affidavit Order decreed that "the Defendant shall have until December 4, 2012 in which to file her equitable distribution affidavit, *which is already well passed [(sic)] the time allowed by law*[.]" (Emphasis added.) That is, on 6 November 2012, despite the fact that according to plaintiff, defendant's ED Affidavit *was not due until 19 November 2012*, the trial court found that defendant has "for whatever reason . . . failed or refused to" file her ED Affidavit in a "timely fashion" and that the time for filing of her ED Affidavit was "already well passed" (sic). Plaintiff's argument is, to use the words of the trial court's ED Affidavit Order describing defendant's failure to appear in court on 6 November 2012, "frivolous [and] unreasonable[.]"

We realize that many things may have happened in this case which are not revealed by the record, despite the fact that counsel for plaintiff and defendant participated in the settlement of the record on appeal and would presumably have included all documents necessary for us to review the issues presented. In fact, several of the documents which do show various important dates were added as supplements to the record. We agree that this equitable distribution case took entirely too long, far beyond the time guidelines set by both North Carolina

General Statute § 50-21 and by the Local Rules. *See* N.C. Gen. Stat. § 50-21; Local Rules, rule 10. Yet we feel compelled to note that *plaintiff* filed the initial equitable distribution claim, and thus he had the obligation under North Carolina General Statute § 50-21(a) to file his ED Affidavit within 90 days. *See* N.C. Gen. Stat. § 50-21(a). Instead, plaintiff filed his ED Affidavit approximately two years and 10 months after he filed his complaint. This is not, as the ED Affidavit Order described it, "timely[.]" The trial court also found in its Sanctions Order that defendant failed to respond to the "REQUEST FOR PRODUCTION OF DOCUMENTS" served upon her in August of 2012; this is true, but essentially irrelevant to the equitable distribution claim, as this request for production included only three requests, the first of which was directed to defendant's counterclaim for post-separation support. While it is true that defendant also failed to take actions that she should and could have taken to comply with the time requirements of equitable distribution and have the case resolved sooner, both parties were complicit in the delay. Also, the record before this Court does not reveal that defendant ever failed to respond to any sort of discovery request relevant to the equitable distribution claim and does not reveal that she ever failed to appear at any

court date other than the 6 November 2012 and 4 December 2012 dates previously discussed.

As we have established that defendant had no notice of the 4 December 2012 deadline before it had passed, we must now consider whether she had sufficient notice that she may face sanctions, in the form of barring her from presentation of evidence as to the identification, valuation, and classification of the property to be distributed and a decree that the trial court would determine the "identification, valuation, and classification of assets and debts" according to plaintiff's ED Affidavit. Although neither the trial court's ED Affidavit Order or Sanctions Order cite any statutory basis for imposition of sanctions against defendant, nor did plaintiff file any motion seeking relief based upon any statute or rule, it appears that the sanctions were based upon North Carolina General Statute § 50-21(e):

> (e) Upon motion of either party or upon the court's own initiative, the court shall impose an appropriate sanction on a party when the court finds that:
> (1) The party has willfully obstructed or unreasonably delayed, or has attempted to obstruct or unreasonably delay, discovery proceedings, including failure to make discovery pursuant to G.S. 1A-1, Rule 37, or has willfully obstructed or unreasonably delayed

or attempted to obstruct or unreasonably delay any pending equitable distribution proceeding, and

(2) The willful obstruction or unreasonable delay of the proceedings is or would be prejudicial to the interests of the opposing party.

Delay consented to by the parties is not grounds for sanctions. The sanction may include an order to pay the other party the amount of the reasonable expenses and damages incurred because of the willful obstruction or unreasonable delay, including a reasonable attorneys' fee, and including appointment by the court, at the offending party's expense, of an accountant, appraiser, or other expert whose services the court finds are necessary to secure in order for the discovery or other equitable distribution proceeding to be timely conducted.

N.C. Gen. Stat. § 50-21(e).

This Court has determined in *Megremis v. Megremis* that the adequacy of notice of potential sanctions under North Carolina General Statute § 50-21 is a question of law which we review *de novo*:

Notice and opportunity to be heard prior to depriving a person of his property are essential elements of due process of law which is guaranteed by the Fourteenth Amendment of the United States Constitution. Whether a party has adequate notice is a question of law. In order to pass constitutional muster, the person against whom sanctions are to be imposed must be

> advised in advance of such charges. Moreover, a party has a due process right to notice both (1) of the fact that sanctions may be imposed, and (2) the alleged grounds for the imposition of sanctions.

179 N.C. App. 174, 178-79, 633 S.E.2d 117, 122 (2006) (citations, quotation marks, and brackets omitted); *see also Suntrust Bank v. Bryant/Sutphin Prop., LLC*, ___ N.C. App. ___, ___, 732 S.E.2d 594, 598 (2012) ("For questions of law, we apply *de novo* review." (citation and quotation marks omitted)).

As also noted in *Megremis*, North Carolina General Statute § 50-21(e) does not set forth any specific requirements for notice, so we have looked to similar statutory provisions for guidance:

> N.C.G.S. § 50-21(e) is silent as to what type of notice is required under the statute and how far in advance notice must be given to a party facing sanctions. Under N.C. Gen. Stat. § 1A-1, Rule 11, a motion requesting sanctions must be served within the period prescribed by N.C. Gen. Stat. § 1A-1, Rule 6(d), not later than five days before the hearing on the Rule 11 motion. N.C.G.S. § 50-21(e) includes conduct sanctioned under N.C. Gen. Stat. § 1A-1, Rule 37, as well as a separate, more general, sanctions provision specific to an equitable distribution proceeding. Under Rule 37, a trial court may impose sanctions, including attorney's fees, upon a party for discovery violations. Our Court has held that a party sanctioned under Rule 37 had ample notice of sanctions where the moving party's written discovery motion clearly

> indicated the party was seeking sanctions under Rule 37. Moreover, at a hearing on the discovery motion, the sanctioned party was given the opportunity to explain to the trial court any justification for the party's delinquency in responding to discovery.

*Megremis*, 179 N.C. App. at 179, 732 S.E.2d at 121 (citations omitted).

As in *Megremis*, "plaintiff filed no written motion seeking sanctions." *Id.* at 179, 732 S.E.2d at 121. Here, the sanctions issue was initially addressed at the hearing on 6 November 2012. The notice of hearing for 6 November 2012 stated that the hearing was set for plaintiff to "make application for relief in the form of equitable distribution of property and for attorney's fees, costs and such other relief as provided in Chapter 50 of the North Carolina General Statutes and as prayed for in the pleadings." No motion to compel or motion for sanctions was filed. No scheduling or pretrial conferences were ever held, although both are required by North Carolina General Statute § 50-21(d) and by the Local Rules. *See* N.C. Gen. Stat. § 50-21(d); Local Rules, rule 10. Instead, plaintiff asked the trial court at the 6 November 2012 hearing, where defendant was not present, "to structure a time frame within which any and all matters pertaining to equitable distribution or any remaining

issues raised in the pleading would be disposed of[,]" and the trial court did this by setting forth the 4 December 2012 deadline previously discussed at length.

We can safely say that the complete absence of notice of potential sanctions under North Carolina General Statute § 50-21(e) is not adequate notice. *See* N.C. Gen. Stat. § 50-21(e). We also disagree with plaintiff that the Sanctions Order "did not adversely affect [defendant] during the hearing." Plaintiff does not dispute that the trial court's ED Judgment makes findings of fact and conclusions of law as to "the identification, valuation, and classification of assets and debts" strictly in accord with plaintiff's ED Affidavit, as the Sanctions Order decreed.

As we must reverse the ED Judgment, we will not address each of defendant's arguments about the failure of the trial court to properly classify, value, and distribute the property. But because these issues will arise again on remand, for guidance to the trial court, we will note that North Carolina § 50-20(c) creates a presumption of an equal distribution, and the trial court must make findings of fact as to the factors under North Carolina General Statute § 50-20(c) to support an unequal

distribution. N.C. Gen. Stat. § 50-20(c) (2009). In its ED Judgment, the trial court based its unequal distribution on

> reasons that include but are not limited to the following:
>
> a. The Defendant's failure to work and contribute to the marital estate.
>
> b. The debt that the Defendant incurred during the marriage and the fact that Plaintiff had to pay off what he did both during the marriage and after the separation.
>
> c. The Defendant was not a stay at home mother but spent a large part of her time up and down the road and with her family and friends in Indiana, that although it appears to the Court that she was capable and able bodied, did not work substantially or materially and contribute towards the marital estate or the needs of the family.
>
> d. The fraud perpetrated on the Plaintiff to believe that the child born during their relationship was his and the fact that he was primarily responsible for that child's support to and through the age of 19.
>
> e. The fact that the Plaintiff ended up paying the educational loans for the Defendant's son by another relationship without any help or contribution from the Defendant.
>
> f. The Defendant took out a false and frivolous domestic violence action against the Plaintiff in order to better her position in court when she could not sustain the burden of proof with regards thereto.
>
> g. The fact that the Plaintiff basically raised and supported her three children from a prior marriage from the date they became married until the date they aged out or moved out of their home.

Most if not all of these factors except possibly (b) appear to

fall under the "catch-all" provision of North Carolina General Statute § 50-20(c)(12): "Any other factor which the court finds to be just and proper[,]" but only factors which address the *economic* aspects of the marriage are relevant to the distribution.[12] *See Smith v. Smith*, 314 N.C. 80, 87, 331 S.E.2d 682, 687 (1985) ("Thus, under 50-20(c)(12), the only other considerations which are just and proper within the theory of equitable distribution as expressed by 50-20(c)(1)-(11) are those which are relevant to the marital economy. Therefore, we hold that marital fault or misconduct of the parties which is not related to the economic condition of the marriage is not germane to a division of marital property under 50-20(c) and should not be considered." (quotation marks omitted)). Many of the trial court's findings of fact and conclusions of law address factors which are simply irrelevant to equitable distribution because they are not economic factors as defined by *Smith*. *See id.*

One particularly egregious example of the trial court's consideration of irrelevant evidence is the paternity of the

---

[12] In fact, the findings as to distributional factors which were disapproved by the Supreme Court in *Smith v. Smith*, bear some resemblance to those in this case, as the trial court there found that defendant generally failed in many ways in her duties as a wife and mother. 314 N.C. 80, 331 S.E.2d 682 (1985).

parties' now-adult child. Plaintiff alleged in his complaint that "one child was born of the marriage who is past the age of majority[;]" defendant's answer admitted this fact. Since this fact was judicially admitted by both parties, it would appear that paternity of the child was not a disputed issue. *See Hinton v. Hinton*, 70 N.C. App. 665, 672, 321 S.E.2d 161, 165 (1984) ("It has long been established that where there is an admission in the final pleadings defining the issues and on which the case goes to trial, such admission is a judicial admission which conclusively establishes the fact for the purposes of that case and eliminates it entirely from the issues to be tried."). Furthermore, support of a child of the marriage, minor or adult, is not a proper distributional factor under North Carolina General Statute § 50-20(c). *See* N.C. Gen. Stat. § 50-20(c); *see also Godley v. Godley*, 110 N.C. App. 99, 117, 429 S.E.2d 382, 393 (1993) ("Defendant further argues that the trial court's finding that plaintiff has voluntarily taken in their 22 year old son, David, was irrelevant to the equitable distribution proceeding. We agree and hold that this factor was improperly considered as a distributional factor. The trial judge also improperly considered the fact that the minor child, Catherine, was still residing at the marital residence at the

time of trial. North Carolina General Statutes § 50-20(f) provides that the court shall provide for equitable distribution without regard to alimony or child support."). Yet in this equitable distribution case, to which the adult son is not a party, plaintiff sought to bastardize his child.

At trial, plaintiff took the position that his son is not his biological child. Defendant had become pregnant prior to the marriage, and plaintiff was aware of the possibility that he may not be the child's father, as defendant "told the Plaintiff that she was 99.5% sure that the child was his[.]" Plaintiff testified that he had a DNA test performed on his son, on the pretense of doing a drug test, and attempted to present as evidence the results of this DNA test to prove that he was not the biological father of said son. The trial court quite properly sustained defendant's objection to the admission of this DNA evidence. Despite the exclusion of the evidence, the trial court then made finding of fact number 6 "[t]hat in the recent past the Plaintiff had DNA samples tested and established to the best of scientific means under current circumstances that the child was and is not his biological child." Based upon finding of fact number 6, the trial court concluded that this factor was one which supported the unequal distribution: "[t]he

fraud perpetrated on the Plaintiff to believe that the child born during their relationship was his and the fact that he was primarily responsible for that child's support to and through the age of 19." Many of the other factors upon which the order relies are also irrelevant as they do not relate to the marital economy.[13] As the judgment must be reversed, we will not address any of the other findings of fact or conclusions of law challenged by defendant.

For the foregoing reasons, we reverse the ED Affidavit Order, the Sanctions Order, and the ED Judgment. We are particularly troubled by the need to vacate the ED Judgment, and thus prolong this case which has already been pending for over four and one-half years, especially since defendant has died during this case. In addition, an equitable distribution claim is one of the very few types of cases which has a statutory scheme which sets forth a timeline for each stage of the case. *See* N.C. Gen. Stat. § 50-21. We are concerned by the complete

---

[13] Factor (b) supporting the unequal distribution was "[t]he debt that the Defendant incurred during the marriage and the fact that Plaintiff had to pay off what he did both during the marriage and after the separation." Factor (b) seems to address the economy of the marriage, but was perhaps misplaced; the trial court may classify debts as marital or separate and may determine what credit should be given for payment of debts after the date of separation, but should not both give credit for payment of debts and give an unequal distribution on this basis, as this gives double credit for the debt payment.

absence of any mention of the timeline and scheduling requirements of North Carolina General Statue § 50-21 and the Local Rules; such statutory provisions and rules are intended to prevent exactly the sort of delay and waste of judicial resources which this case demonstrates. On remand, we direct the Chief District Court Judge to set a date for a scheduling conference, as directed by Rule 10(b) of the Local Rules, with proper notice of this scheduling conference to plaintiff and defendant, so that the trial court may set forth a new schedule for this case on remand in accord with North Carolina General Statute § 50-21 and the Local Rules, to the extent possible from this point forward.

## IV. Conclusion

For the foregoing reasons, we reverse the ED Affidavit Order, the Sanctions Order, and the ED Judgment; and we remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

Judges MCGEE and BRYANT concur.