# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **J.W.**

**No. 18-0257** (Clay County 17-JA-23)

**FILED**

**October 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother A.H., by counsel Kevin W. Hughart, appeals the Circuit Court of Clay County's February 22, 2018, order terminating her parental rights to J.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Michael W. Ashbury Jr., filed a response on behalf of the child in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in (1) admitting expert evidence concerning petitioner's drug screens and toxicology reports without laying a proper foundation and denying petitioner's motion to admit evidence to rebut the DHHR's evidence; (2) ordering that petitioner provide a letter of medical necessity regarding the medications she was prescribed; (3) finding that "[petitioner] testified that she was on a list of medications and that she did not submit a list of meds to Alere Toxicology;" (4) denying a continuance of the dispositional hearing when petitioner arrived late; (5) considering petitioner's psychiatric evaluation in its decision whether to grant petitioner an improvement period; (6) and finding no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. Petitioner also alleges that she was denied effective assistance of counsel.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 7, 2017, the DHHR filed an application for ratification of emergency custody alleging that petitioner was arrested that same day for stealing a vehicle and possession of

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

marijuana. According to the DHHR, on May 6, 2017, petitioner and her husband had an altercation in which they hit each other in the face. Additionally, the children told the DHHR worker that both parents smoked marijuana in their presence.[2] A truancy warrant was also issued for the parents due to the number of the children's unexcused absences from school.

On May 9, 2017, the DHHR filed an abuse and neglect petition against petitioner and her husband alleging that they engaged in domestic violence in the children's presence. The DHHR specifically alleged that petitioner and her husband regularly engaged in acts of domestic violence, including arguing and hitting one another in the presence of the children. On one occasion, following an argument wherein petitioner's husband grabbed her by the throat, the husband used his vehicle to run petitioner's vehicle off the road. The DHHR further alleged that petitioner and her husband had a history of substance abuse and used marijuana, methamphetamine, and Suboxone in the home or in the presence of the children. Additionally, the DHHR alleged that petitioner mentally and emotionally abused the children by failing to protect them from domestic violence and substance abuse.

On May 15, 2017, the circuit court held a preliminary hearing. According to the circuit court's order following the hearing, petitioner, "through the assistance of . . . counsel, freely, knowingly, intelligently, and voluntarily waived [her] right to a preliminary hearing." The circuit court ordered that petitioner remain drug and alcohol free and submit to random alcohol and drug screening. Petitioner requested visitation with the children, which the circuit court granted as long as she remained free of substances.

On July 25, 2017, the circuit court held an adjudicatory hearing. Petitioner stipulated to the allegations set forth in the petition. The circuit court found that she had engaged in domestic violence in the children's presence, failed to provide a suitable home for the children, and abused controlled substances in the children's presence. It further found that her substance abuse affected her ability to properly parent. Accordingly, petitioner was adjudicated as an abusing parent. Because petitioner claimed that her prescription medications caused her to screen positive for illicit substances, the circuit court ordered petitioner to provide a "well-reasoned medical opinion" regarding the medications she was prescribed.

On August 30, 2017, the circuit court held a dispositional hearing at which counsel for petitioner moved for a continuance of the hearing in order to obtain a toxicology expert, which the circuit court granted. The circuit court authorized the use of $1,500 to secure such expert. Petitioner was ordered to drug screen at the conclusion of the hearing, but left the courthouse without doing so. On September 27, 2017, the circuit court held a dispositional hearing. Counsel for petitioner again moved for a continuance of the hearing and requested additional funds to obtain a toxicology expert. The circuit court continued the hearing, but denied counsel's motion for additional funds.

---

[2]Petitioner's husband's child is not at issue in this appeal.

On November 15, 2017, the circuit court held a dispositional hearing. Petitioner did not appear, but was represented by counsel. The DHHR presented evidence that petitioner participated in parenting and adult life skills sessions sporadically and failed to attend a psychological evaluation. The DHHR also presented evidence that petitioner was unable to attend visitations with the child after May of 2017 due to her positive drug screen results. However, counsel for petitioner argued that petitioner's medications caused the positive drug screen results. Further, testimony was presented that petitioner's list of prescription medications was given to the drug screening supervisor in September of 2017. The circuit court explained its reasoning for requesting a letter of medical necessity, stating that "doctors give out medications like candy. The mere fact they have prescriptions, does not mean to this [c]ourt, that that's a proper use of those drugs." The circuit court continued the dispositional hearing and ordered that petitioner participate in parenting and adult life skills sessions and undergo a psychological evaluation, including a substance abuse evaluation and a parenting evaluation.

On January 5, 2018, the circuit court held a dispositional hearing. Counsel for petitioner moved for a continuance because petitioner had not yet arrived to the hearing, but the circuit court denied the motion. Petitioner arrived shortly thereafter. The circuit court took judicial notice of prior evidence, and the DHHR proceeded to present testimony. A psychologist testified that, following petitioner's evaluation, she concluded that petitioner "denied domestic violence, denied pervasive drug use, pretty much said there was absolutely nothing wrong and that nothing needed to be improved." The psychologist opined that petitioner would not improve if given the opportunity. She further testified that petitioner was adamant that she had been "wronged by the [DHHR], by the police, by the [c]ourt, and that [she] had been . . . treated unfairly . . . through this process."

Next, a service provider from New Hope testified that petitioner stopped participating in services on June 11, 2017, and that overall, she attended twenty-six parenting and adult life skills sessions and missed twenty-two sessions. He further testified that during sessions, petitioner wanted to focus on the failures of her attorney, Child Protective Services, and the circuit court. He opined that petitioner did not benefit from services because she refused to acknowledge the conditions of abuse and neglect that led to the filing of the petition.

Next, Lucy Cruickshank, the Clay County probation officer who administered petitioner's drug screens, testified that she collected petitioner's specimens and sent them to a laboratory for testing. She explained that she received reports from the laboratory with petitioner's results. She testified that petitioner missed many screens, but when she did screen, she consistently tested positive for methamphetamines and amphetamines. Further, she presented evidence from the Alere Toxicology reports that petitioner tested positive for methamphetamine on May 9, 2017; June 27, 2017; June 28, 2017; August 11, 2017; and August 31, 2017. Ms. Cruickshank testified that those drug screen results were certified by a scientist at Alere Toxicology. Counsel for petitioner objected to the testimony regarding her positive drug screen results, but the circuit court overruled the objection. When questioned by counsel for petitioner, Ms. Cruickshank testified that she did not know the chain of custody after the samples were sent

3

to Alere, but that she did request a second evaluation of the samples. She continued to explain that following the second evaluation of the samples, the "'d-isomers' found in petitioner's samples were consistent with illegal methamphetamine use."[3] She further testified that when she obtained petitioner's list of medications, she provided that list to Alere Toxicology with petitioner's samples. Ms. Cruickshank further testified that petitioner's husband also tested positive for methamphetamine during the same times as petitioner. During his testimony, petitioner's husband explained that he was also on several medications. However, he did not allege that his positive screens were caused by his medications. Lastly, Ms. Cruickshank testified that petitioner threatened her during drug screens and that petitioner acted in an aggressive, belligerent, and defiant manner when she appeared for drug screens.

Petitioner testified that she was on several medications and that those medications caused false-positive drug screen results. She explained that she stopped taking some of her medications in September or October of 2017, in hopes of passing her drug screens and seeing her daughter.[4] In its order following the hearing, the circuit court found that petitioner failed to accept responsibility for the issues of abuse and neglect and that she failed to establish by clear and convincing evidence that she would comply with the terms and conditions of an improvement period. Further, the circuit court found no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was in the child's best interests. Ultimately, the circuit court terminated petitioner's parental rights in its February 22, 2018, order.[5] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record

---

[3]It is uncontested that the drug screening administrator is neither a scientist nor a toxicology expert.

[4]The record is devoid of any evidence that petitioner attempted to drug screen after she allegedly stopped taking some of her medications.

[5]According to the parties, J.W.'s father retains his parental rights, but does not have custody. The permanency plan for J.W. is legal guardianship by her ex-stepfather.

viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in admitting "expert evidence concerning petitioner's drug screen results and toxicology reports without laying a proper foundation" and in denying petitioner's motion to admit evidence to contradict that of the DHHR. We disagree. Petitioner was authorized the use of $1,500 to secure an expert witness and failed to do so. Further, she did not call any adverse witnesses or any Alere Toxicology employee to testify. To the extent that petitioner argues that the DHHR did not lay a proper foundation to admit the drug screens, we find that this argument is not supported by sufficient legal authority or evidence. Therefore, we find no error by the circuit court in admitting petitioner's drug screen results.

Before proceeding to address petitioner's other assignments of error, this Court notes that, in the entirety of her brief, petitioner focuses only on her drug screens and fails to address any of the other issues of abuse and neglect present, including domestic violence in the child's presence. Further, petitioner refuses to acknowledge any responsibility for her actions that led to the filing of the abuse and neglect petition. Additionally, her brief lacks a discussion regarding any steps she has taken to remedy the conditions of abuse and neglect. While she maintains that expert witnesses were needed to prove the admissibility of her drug screens, the circuit court's decision to terminate petitioner's parental rights was not based solely on her positive drug screen results. As further discussed below, the circuit court considered the totality of the circumstances in ordering the termination of her parental rights, including petitioner's failure to accept responsibility for her actions, failure to participate in services, and failure to remedy the conditions of abuse and neglect. Even without the admission of her positive drug screen results, the circuit court had ample evidence upon which to base the termination of petitioner's parental rights.

Next, petitioner argues that the circuit court erred in ordering her to submit a letter of medical necessity regarding the medications she was prescribed. In support, petitioner argues that the circuit court abused its discretion in ordering such letter and that the prescriptions for all of her medications should have been sufficient. We observe, however, that it was petitioner who first raised the issue of her medications, arguing that they caused her to test positive on drug screens. Therefore, the circuit court did not abuse its discretion by requesting a letter regarding the medical necessity of the medications she was prescribed.

Petitioner also argues that the circuit court erred when it found that she "testified that she was on a list of medications and that she did not submit a list of meds to Alere Toxicology." Specifically, petitioner argues that it was erroneous for the circuit court to include this particular finding in its dispositional order. Petitioner does not cite to any legal authority regarding this specific argument, in violation of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure. Therefore, we decline to address this issue.

Next, petitioner argues that the circuit court erred when it denied a continuance of the final dispositional hearing because she was having car trouble and arrived to the hearing late. We have held that "[w]hether a party should be granted a continuance for fairness reasons is a matter left to the discretion of the circuit court, and a reviewing court plays a limited and restricted role in overseeing the circuit court's exercise of that discretion." *Tiffany Marie S.*, 196 W.Va. at 235, 470 S.E.2d at 189. While petitioner did arrive late to the dispositional hearing, prior to her arrival, her attorney was present to represent her interests. Additionally, petitioner had already been granted two continuances of the dispositional hearing and had failed to appear for one prior dispositional hearing. Therefore, we find the circuit court did not abuse its discretion in denying petitioner's motion for a continuance.

Petitioner argues next that the circuit court erred in denying her an improvement period based upon her psychological evaluation. In support, petitioner argues that the psychologist ignored her mental health diagnoses in conducting her psychological and parental fitness evaluations.[6] We do not find this argument persuasive. West Virginia Code § 49-4-610 provides that a parent may be granted an improvement period if "[t]he [parent] demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." Additionally, we have stated that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015).

Although petitioner testified that she would comply with an improvement period, her actions and behavior throughout the proceedings do not support her testimony. The circuit court's decision to deny petitioner an improvement period was not based solely on her psychological report, but on a totality of the circumstances in the case. The record shows that petitioner failed to comply with the services offered to her throughout the proceedings. Petitioner failed to fully participate in or benefit from the parenting and life skills sessions that she attended. Additionally, petitioner missed several drug screens and tested positive for illicit substances on drug screens. On one particular occasion, petitioner failed to comply with the circuit court's order to submit to a drug screen before leaving the courthouse following a hearing on August 30, 2017. Further, she was unable to participate in visitation with her child due to her positive and missed drug screens. Lastly, petitioner's attitude during the proceedings was poor and led respondents and the circuit court to conclude that petitioner would not improve, if given the opportunity. Petitioner was described as acting in an aggressive, belligerent, and defiant manner when she appeared for drug screens, and the record shows that petitioner blamed other parties and the circuit court for the proceedings, rather than addressing the issues of abuse and neglect. Based on this evidence, it is clear that petitioner did not meet the requisite burden to receive an improvement period.

Moreover, we have also explained that

---

[6]Petitioner also attempts to discredit the psychologist by asserting that she is "unlicensed." However, the dispositional transcript shows that counsel for petitioner "stipulate[d] to her qualifications." We find that petitioner waived her right to challenge the psychologist's qualifications on appeal.

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)).While petitioner contests the psychologist's report, the psychologist testified, and it is clear from the record, that petitioner denied any domestic violence, drug use, or abuse and neglect. The circuit court ultimately found that petitioner failed to take any "responsibility for [her] actions of abuse and neglect, even though [she] previously admitted to the same." Based on this evidence, petitioner failed to acknowledge the existence of any abuse and neglect issues, making an improvement period futile.[7] As such, we find that the circuit court did not err in denying petitioner the same.

Next, petitioner argues that the circuit court erred when it found that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future. In support, petitioner argues that she should have been granted an improvement period prior to the termination of her parental rights. We disagree. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) clearly indicates that a situation where there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child. . . .

---

[7]Petitioner argues that, pursuant to *In Re Darla B.,* 175 W.Va. 137, 331 S.E.2d 686 (1985), the circuit court must state what compelling circumstances warrant the denial of an improvement period. However, in 1996, the West Virginia Legislature revised Section 49 of the West Virginia Code to remove the "compelling circumstances" requirement for improvement periods set forth in West Virginia Code § 49-6-2(b) and replaced it with West Virginia Code § 49-6-12, which was recodified in 2015 at West Virginia Code § 49-4-610. Currently, this statute governs improvement periods in abuse and neglect proceedings and places the burden on the parent to prove that she is likely to fully participate in the improvement period. As discussed above, petitioner did not meet that burden.

While petitioner complains that the DHHR "failed to provide competent services," the DHHR did provide services to petitioner but petitioner failed to substantially participate in them. Further, as discussed above, petitioner denied any wrongdoing, despite her admissions at adjudication. Due to her failure to acknowledge the conditions of abuse and neglect, the issues that led to the filing of the petition were not adequately addressed, as evidenced by her lack of participation in her parenting and life skills sessions and failure to benefit from services. Petitioner missed nearly half of her classes and stopped participating altogether in June of 2017. Additionally, petitioner was unable to participate in visitation with her child due to her positive drug screens. Although she contests her positive drug screen results, petitioner missed several drug screens in violation of circuit court orders. Based on this evidence, it is clear that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination was in the child's best interests.

Further, while petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period, as discussed above, petitioner did not meet the applicable burden to receive an improvement period. Moreover, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). For these reasons, the termination of petitioner's parental rights was appropriate.

Finally, petitioner alleges that she was denied effective assistance of counsel because counsel advised her to waive her preliminary hearing and make admissions at adjudication. This Court has never recognized a claim of ineffective assistance of counsel in an abuse and neglect proceeding and we decline to do so here.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 22, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: October 12, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II, suspended and therefore not participating